UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

JAMES V. NAPLES and                                   Docket No. CV-12-04460
JAMES C. NAPLES,

            Plaintiffs,

                                                      **AMENDED**
      -against-                                       **VERIFIED COMPLAINT**

PHILIP STEFANELLI; JOSEPH PARISI;
DAVID PARISI; ENVIRONMENTAL
SERVICES, INC.; SUFFOLK COUNTY
(NEW YORK) POLICE DEPARTMENT;
COUNTY OF SUFFOLK (NEW YORK);
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION                            WEXLER, J.
POLICE DEPARTMENT; NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL
CONSERVATION; STATE OF NEW YORK;                      LINDSAY, M.J.
and JOHN DOES 1-100,

            Defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## NATURE OF THE CASE

1.      This is a lawsuit alleging violation of 42 U.S.C. section 1983 in relation to the

violation of Plaintiffs' Civil Rights granted under the United States Constitution and

related claims set forth, *infra;* violation of 18 U.S.C. section 1961, *et seq.;* violation of

New York State Antitrust laws; violation of New York State Consumer Protection laws;

Intentional Infliction of Emotional Distress; Intentional Interference with advantageous/

contractual/business relations; extortion, fraud, and money laundering in violation of 18

U.S.C. section 1961, *et seq.;* the negligent hiring, training and supervision of certain

known and unknown police officers connected herewith; and all claims relating thereto.

1

Attorney fees and punitive damages are sought pursuant to the Civil Rights Attorney's

Fees Awards Act of 1976, 18 U.S.C. section 1961 *et seq.,* 42 U.S.C. section 1983, the

New York Antitrust law, and the New York Consumer Protection law.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the within action under Federal question

jurisdiction pursuant to 28 U.S.C. Section 1331.   Jurisdiction over state claims arises

under 28 U.S.C. Section 1367. Venue is proper in this district pursuant to 28 U.S.C.

Section 1391 because a substantial part of the events and/or omissions giving rise to the

claims herein occurred in this district, the Plaintiffs reside in this district, the Defendants

reside in this district and/or conduct business in this district at all relevant times. A

specific request is hereby made for this matter to be heard in the Brooklyn Courthouse

given the within accusations of official misconduct on the part of various Suffolk County

employees and the potential for prejudice to Plaintiffs if this matter is tried in the Central

Islip Courthouse in Suffolk County before Suffolk County residents.

## PARTIES

3.      Plaintiff, James V. Naples (hereinafter, "JVN" or "Mr. Naples"), is a natural

person who resided at all relevant times in Suffolk County, New York.  At various times

relevant hereto, JVN owned, operated, and/or was employed by Island Biofuel, LLC

(hereinafter, "Island Biofuel", a domestic limited liability corporation servicing the

biofuel and biofeed industries by and through, *inter alia,* the collection and re-sale of

waste vegetable/kitchen oil), and/or JNS Industries, LLC (hereinafter "JNS", a domestic

limited liability corporation providing rendering/trucking services primarily to the biofuel

and biofeed industries by and through, *inter alia,* the collection and re-sale of waste

vegetable/kitchen oil; JNS is also known as "J&S" and as "J and S"). At all times relevant hereto, Island Biofuel and JNS operated out of offices and storage facility in Center Moriches, New York, and served predominately the Long Island, New York, biofuel/biofeed market. At all times relevant hereto, Island Biofuel and JNS engaged in interstate commerce.

4.     Plaintiff, James C. Naples (hereinafter, "JCN" or "Jimmy Naples"), is a natural person who resided at all relevant times in Suffolk County, New York. At various times relevant hereto, JCN owned, operated, and/or was employed by Island Biofuel and/or JNS. James C. Naples is the son of James V. Naples.

5.     Defendant, Philip Stefanelli (hereinafter, "Stefanelli"), is a natural person who resided at all relevant times in Suffolk County, New York. At various times relevant hereto, Stefanelli was employed by the Suffolk County (New York) Police Department as a police officer, and by Environmental Services, Inc., a domestic corporation providing rendering services, *inter alia,* to the biofuel and biofeed industry.

6.     Defendant, Joseph Parisi (hereinafter "JP" or "Mr. Parisi"), is a natural person who resided at all relevant times in Suffolk County, New York. At various times relevant hereto, Mr. Parisi owned, operated, and/or was employed by Environmental Services, Inc., a domestic corporation providing rendering services, *inter alia,* to the biofuel and biofeed industry.

7.     Defendant, David Parisi (hereinafter "DP" or "Dave Parisi"), is a natural person who resided at all relevant times in Suffolk County, New York. At various times relevant hereto, Dave Parisi owned, operated, and/or was employed by Environmental Services,

Inc., a domestic corporation providing rendering services, *inter alia,* to the biofuel and biofeed industry. Dave Parisi is the son of Joseph Parisi.

8.      Defendant, Environmental Services, Inc. (hereinafter, "ESI"), is a domestic corporation with a principal office at all relevant times in Suffolk County, New York. ESI provides rendering services to the biofuel and biofeed industry, including collection, transportation, and sale of biofuel and waste vegetable/kitchen oil products utilized in the production of biofuel and biofeed in the Long Island, New York, biofuel and biofeed market. At all times relevant hereto, ESI was in direct competition with Plaintiffs, Island Biofuel, and JNS, in the biofuel, biofeed, and waste vegetable/kitchen oil industry in the Long Island, New York, biofuel and biofeed market. At all times relevant hereto, ESI engaged in interstate commerce.

9.      Defendant, Suffolk County (New York) Police Department is a governmental entity/body that is a part of the government of and for the Defendant County of Suffolk, New York (hereinafter, collectively, "SCPD"). At all times relevant hereto, SCPD hired, trained, supervised, and employed Defendant Stefanelli, and hired, trained, supervised, and employed one or more of the police officers named herein as John Does 1-100. It is the specific intent of the Plaintiffs that when reference is made herein to either Suffolk County Defendant, said reference is intended to refer to both Suffolk County Defendants.

10.      Defendant, New York State Department of Environmental Conservation Police Department is a governmental entity that is a part of the Defendant New York State Department of Environmental Conservation of and for the Defendant State of New York (hereinafter, collectively, "ECPD"). At all times relevant hereto, ECPD hired, trained, supervised, and employed one or more of the police officers named herein as John Does

4

1-100.  It is the specific intent of the Plaintiffs that when reference is made herein to any of the three New York State Defendants, said reference is intended to refer to all three New York State Defendants.

11.     Defendants, John Does 1-100, are unknown police officers of the SCPD and the ECPD who conspired with the known Defendants on the claims and allegations set forth herein.  At all times relevant hereto, John Does 1-100 acted jointly and severally with the co-Defendants in violating Plaintiffs' Constitutional Rights and such other claims and violations as set forth, *infra*.  Certain John Doe Defendants negligently hired, trained, and supervised Defendant Stefanelli and the other unknown John Does who conspired with the known Defendants on the claims set forth herein.  Certain John Doe Defendants worked at and still work at Defendant ESI.  Certain John Doe Defendants negligently hired, trained, and supervised other unknown John Doe Defendants with the co-Defendant police departments.

## FACTS RELEVANT TO ALL COUNTS

12.     Plaintiffs restate each of the preceding paragraphs as if specifically rewritten here.

13.     At all times relevant hereto, Plaintiffs have owned, and/or operated, and/or been employees of Island Biofuel and JNS.

14.     At all times relevant hereto, Island Biofuel and JNS were renderers to and for the Long Island, New York, biofuel, biofeed, and waste vegetable/kitchen oil industry (hereinafter, collectively, "biofuel industry").

15.     At all times relevant hereto, Island Biofuel and JNS were in direct competition with ESI for rendering to the biofuel industry.

16.     Island Biofuel was formed by one or both Plaintiffs as a domestic limited liability company during August, 2006; JNS was formed by one or both Plaintiffs as a domestic limited liability company during October, 2006. No one but the Plaintiffs ever owned, operated, or were members of these two LLC's.

17.     ESI was formed as a domestic corporation by Defendant Joseph Parisi during March, 1983, but only commenced rendering to the biofuel industry during the 2000's.

18.     Commencing during or about 2010, ESI stole customers that were duly contracted with Island Biofuel, totaling in excess of 100 customers stolen through the spring of 2012.

19.     When ESI took customers from Island Biofuel, ESI typically also took Island Biofuel's storage container(s) from that customer's premises.

20.     On occasion, ESI would inform Island Biofuel that it took the storage container and invite Plaintiffs to retrieve same; sometimes, ESI would take the container, replace it with their own, and Plaintiffs would never again see the container formerly located at the customer's premises.

21.     The containers taken by ESI were taken at all relevant times without Plaintiffs' permission, and if and when ESI returned containers, they were always offered to Plaintiffs for pick up while empty, drained by ESI of Plaintiffs' contracted waste vegetable oil.

22.     The value of the containers taken by ESI without Plaintiffs' permission each cost between two hundred ($200.00) dollars and five hundred ($500.00) dollars.

23.     The total value of containers taken by ESI without Plaintiffs' permission and never returned is in excess of fifteen thousand ($15,000.00) dollars.

24.     Attached hereto as Exhibit A are true and accurate copies of representative correspondence sent by ESI and the Parisi Defendants to Plaintiffs on occasion when ESI took contracted customers and/or containers from Plaintiffs and Island Biofuel.  ESI and the Parisi Defendants did not always send correspondence to Plaintiffs when they took contracted customers, containers, and waste vegetable oil from Plaintiffs.

25.     In response, Plaintiffs occasionally caused correspondence to be sent to ESI and the Parisi Defendants.  Attached hereto as Exhibit B are true and accurate copies of representative correspondence sent on behalf of Plaintiffs and Island Biofuel to ESI and the Parisi Defendants in connection herewith.  Plaintiffs did not always send correspondence to ESI and the Parisi Defendants when ESI and the Parisi Defendants took customers, containers, and waste vegetable oil from Plaintiffs.

26.     When ESI took containers from Plaintiffs and Island Biofuel, ESI also took the waste vegetable oil from the containers.

27.     Since 2010 through and including the closing of Island Biofuel and the sale of its remaining assets during or about the Spring of 2012, ESI, by and through the Parisi Defendants, have stolen in excess of twenty thousand (20,000) gallons of waste vegetable oil from Plaintiffs and Island Biofuel.

28.     The value of stolen oil from Island Biofuel exceeds fifty thousand ($50,000.00) dollars.  The value of stolen customers by ESI and the Parisi Defendants from Plaintiffs is an amount to be determined at trial, but is in excess of one hundred thousand ($100,000.00) dollars.

29.     At all times relevant hereto, Plaintiffs locked the containers that were placed on customers' premises.

30.     Some locks disappeared with the containers, and were never seen again.  All containers taken by ESI that were made available to Plaintiffs for pick up were made available absent any locks.

31.     It became commonplace by 2011 that Plaintiff James C. Naples, during collection trips in JNS vehicles to pick-up waste vegetable oil from customers' premises, would find open, undamaged locks at the bottom of near-empty containers, even while visiting a particularly busy customer's premises.

32.     It is clear that over time ESI and the Parisi Defendants obtained a key to Plaintiffs' locks, which all operated off of one key, and utilized the impermissibly obtained key to siphon the contents of Plaintiffs' containers for their own financial gain.

33.     During or about September, 2011, Plaintiff James C. Naples was driving a truck collecting waste vegetable oil, when he was pulled over by one or more SCPD police officers unknown to Naples at the time, although it is now known that Defendant Stefanelli was one of the officers.

34.     For more than two (2) hours at the scene of the pull over, James C. Naples was arrested, handcuffed, and placed in the rear of a police cruiser, which was locked from the inside, and Naples was unable to open the doors.  A passenger with Naples that day was told by an unknown policeman with the SCPD to wait by the side of the road and was not arrested. At no time was James C. Naples read his Miranda rights by any police officer.

35.     During the time that he was in the police cruiser and unable to get out or leave the scene, Plaintiff James C. Naples saw a policeman at the scene now known to be Defendant Stefanelli.

36.    During the time that he was in the police cruiser and unable to get out or leave the scene, Plaintiff James C. Naples saw Defendant Stefanelli make telephone calls and/or texts from the scene of the arrest.

37.    After Defendant Stefanelli placed certain telephone calls and/or texted while being observed by Plaintiff James C. Naples, Defendant David Parisi appeared at the scene of the pull over and spoke to Defendant Stefanelli.

38.    At the scene of the initial pull over, the SCPD officers thoroughly examined and searched the truck James C. Naples was driving, inside and outside.  At no time did the officers ask for permission to search the vehicle; at no time did James C. Naples give permission to search the vehicle; and at no time did the officers obtain a search warrant to search the vehicle.  The search of the truck that day was an unreasonable search.

39.    While one or more unknown members of the SCPD and Defendant Stefanelli searched the truck James C. Naples was operating that day, a pair of bolt cutters were discovered in the vehicle and taken by the SCPD.  The seizure of the bolt cutters from the truck that day constituted an unreasonable seizure.

40.    It is commonplace in the biofuel industry for collectors of waste vegetable oil to carry bolt cutters to open locks caked in vegetable oil that will not otherwise open.

41.    Shortly after the time that he was first placed in the rear of the police cruiser and unable to get out or leave the scene, Plaintiff James C. Naples possessed and was able to utilize and did utilize his own cell telephone to reach his father, Plaintiff James V. Naples.

42.     After James C. Naples informed his father where he was and that he was under arrest, James V. Naples drove to the arrest scene, which was not far from where James V. Naples was reached by his son.

43.     Plaintiff James V. Naples attempted to approach the police cruiser containing James C. Naples, but was stopped by one or more SCPD police officers, including one that is now known to be Defendant Stefanelli.

44.     Defendant Stefanelli threatened to arrest James V. Naples if he did not get back into his own automobile; after words were exchanged, James V. Naples complied and returned to his own vehicle.

45.     Although he was not permitted to talk to his son until after the police released James C. Naples from the police cruiser in which he was locked, James V. Naples stayed at the arrest scene and personally observed the same things seen by James C. Naples, i.e., the presence of Defendant Stefanelli, and that Defendant David Parisi was called to the scene.

46.     While still at the scene of the initial arrest, Defendant Stefanelli informed James C. Naples that he, Stefanelli, had called the Suffolk County Motor Carrier Safety Division (hereinafter "SCMCSD"), and that the officers would meet James C. Naples at the Knights of Columbus hall up the street specifically for the purpose of inspecting James C. Naples' truck, and that Naples was to follow Stefanelli to the inspection.

47.     Naples complied with the orders of Defendant Stefanelli, and followed Stefanelli up the street to the local Knights of Columbus hall.

48.     Plaintiff James V. Naples also followed James C. Naples and Defendant Stefanelli

up the street to the local Knights of Columbus hall, where the SCMCSD officer(s) had

not yet arrived.

49.     James V. Naples eventually left the scene of the inspection prior to SCMCSD

officers arriving.

50.     Eventually, the SCMCSD officer(s) appeared and set up an inspection site

specifically to inspect James C. Naples' truck.

51.     Eventually, the ECPD police appeared at the inspection site.

52.     Eventually, Defendant Joseph Parisi appeared at the inspection site, and began

taking pictures.

53.     When James C. Naples complained to the police present about Joseph Parisi

appearing at the inspection site and taking pictures, an unknown SCMCSD police officer

yelled in James C. Naples' face, "it's a public parking lot."

54.      James C. Naples was put in fear by the police officer, intimidated, and therefore,

dropped the matter and said nothing else about Joseph Parisi's presence.

55.     After the inspection, James C. Naples was charged with a broken windshield

wiper blade and an expired insurance health card, and was ordered by the police 1) to

drive the truck back to Plaintiffs' garage; 2) to park the truck at the garage; 3) to not use

the truck until the wiper blade was fixed; and 4) that the ECPD were going to follow him

back to the garage to make sure that he complied.  At no time at the inspection site did

any officer read James C. Naples his Miranda rights.

56.     James C. Naples complied with the order of the police, and drove the truck back

to the garage, followed by the ECPD police.

57.     The ECPD police officer followed Naples all the way on to the Plaintiffs' private property without permission, and pulled up to the garage door, whereupon the ECPD police officer informed James C. Naples that he was going into the garage for an inspection, and then walked uninvited into the garage.

58.     At all times relevant hereto, Plaintiffs utilized the garage in question to store waste vegetable oil prior to shipment to the biofuel industry here on Long Island and, occasionally, through interstate commerce, and while in direct competition with ESI.

59.     At no time was or is the garage visible to or open to the public, as it faces the rear of the property, and at no time that day did Naples or anyone else on behalf of Plaintiffs discuss the biofuel business or the garage with any of the Defendant police officers.

60.     When James C. Naples complained to the officer that he had no right to conduct the inspection, the officer replied, "I'm just following orders."

61.     After inspecting the garage, the ECPD officer gave James C. Naples certain tickets for the garage, and ordered the garage closed. At no time did the ECPD officer read James C. Naples his Miranda rights.

62.     At no time did anyone give the ECPD permission to come on to Plaintiffs' property in Center Moriches where the garage is located; at no time did the ECPD obtain a warrant to search the site where the garage is located; at no time did the ECPD have probable cause to search the garage; the search and order of closure was and is an unreasonable search and seizure.

63.     SCMCSD is a division of the SCPD, and both are a part of the government of Defendant Suffolk County, New York.

64.     Days later, James C. Naples was contacted by an unknown police officer from the 7th Precinct, Suffolk County, the same Precinct where Defendant Stefanelli worked.

65.     The unknown officer ordered Naples to report to the Precinct regarding the truck incident.  James C. Naples complied, and appeared later that day.

66.     When Naples appeared, he was re-arrested, booked, and charged with cutting a ten ($10.00) dollar lock with bolt cutters.  At the time of the re-arrest, Naples was told that "a restaurant owner saw him do it."  At no time was Naples read his Miranda rights.

67.     Upon appearing in Court on the charges, Naples was given a witness statement alleging that he cut a lock purportedly owned by ESI.  The statement was not signed by a restaurant owner, but rather, it was signed by Defendant David Parisi, son of ESI's owner, Defendant Joseph Parisi, the Plaintiffs' very aggressive chief competitors.

68.     Tellingly, James C. Naples was not charged with stealing waste vegetable oil.

69.     Upon information and belief, Defendant Stefanelli telephoned and/or texted one or both Parisi Defendants from the initial arrest scene.

70.     Upon information and belief, these arrests and related charges were a coordinated effort between all of the Defendants for the purpose of helping Defendant ESI and for the purpose of harming Plaintiffs.

71.     Upon information and belief, these arrests and related charges were part of the criminal enterprise utilized by Defendant ESI by and through the Parisi Defendants to help ESI, to hurt Plaintiffs, and to further a money laundering scheme more fully set forth, *infra*.

72.     At all times relevant to these tickets and arrests, Defendant Stefanelli, the lead officer involved with the arrests and tickets to Plaintiffs, was employed by Defendant ESI

and the Parisi Defendants, a fact which was not known by Plaintiffs at the time of the arrests.

73.     Under the circumstances, these tickets and arrests fail to avoid the appearance of impropriety, and the arrests are and were wrongful arrests.

74.     Upon information and belief, Defendant Stefanelli set up the initial arrest, set up the inspection of the truck, and further arranged for the ECPD to inspect and close the garage where Plaintiffs stored waste vegetable oil after collection and prior to shipment.

75.     There was no probable cause and there was no event that took place other than a coordinated effort amongst Defendants herein to seriously injure Plaintiffs and their businesses by and through these arrests and tickets.

76.     The ECPD police officer issued tickets to James C. Naples alleging impermissible operation of a "plant", and ordered the Plaintiffs to cease use of the facility at once.

77.     On one or more occasions after the arrests, ECPD caused one or more employees/engineers to inspect the storage garage.

78.     The engineer(s) employed by ECPD informed Plaintiffs that expensive plans, licenses, and fines totaling tens of thousands of dollars were necessary for ECPD to even consider allowing the storage facility to re-open.

79.     After the initial Court appearance at which Plaintiffs were informed that the alleged witness to the purported lock cutting is none other than the son of their chief competitor, and during the time/weeks that ECPD engineer(s) were inspecting the closed storage facility before the end of 2012, Plaintiffs had the occasion to go to the operational headquarters of Defendant ESI to (again) pick up one or more storage containers wrongfully and impermissibly in ESI's possession.

80.    They were stunned to see Defendant Stefanelli working at the facility dressed fully in clothing indicating that he was employed by and working for Defendant ESI.

81.    Plaintiffs immediately recognized Stefanelli as the officer from the arrest scene, the individual who spoke to Defendant Joseph Parisi at the arrest scene, the individual who yelled at James V. Naples for appearing at the arrest scene, the person who arranged for the SCMCSD to inspect Plaintiffs' truck, and the person who, upon information and belief, arranged for the ECPD to go to Plaintiffs' storage facility to shut down their operations absent any probable cause.

82.    Defendant Stefanelli watched as another ESI employee insisted that before Plaintiffs would be permitted to take their own storage container(s) that ESI had taken from (a) customer(s) premises without permission, Plaintiffs would be required to sign a release form running to Defendant ESI for their actions.

83.    Plaintiffs were furious with the discovery of Defendant Stefanelli's presence, and did not want to sign any forms for ESI, so they insisted that the SCPD be called and brought to the scene.

84.    Thereafter, Defendant Stefanelli arranged for another officer to appear. When another SCPD officer appeared, he spoke first with Defendant Stefanelli, then informed Plaintiffs that he would not get involved further and that if Plaintiffs wanted their container, they would have to sign the release as requested. On that occasion, Plaintiffs signed for their container(s), against their wishes.

85.    Since ESI commenced the within and other attacks on Plaintiffs, their livelihoods, their property, and their businesses, Plaintiffs on various occasions made complaints to the SCPD about ESI, the Parisi Defendants, and their wrongful actions.

86.     At no time did SCPD take any action to stop ESI or the Parisi Defendants from the within and other acts and omissions, nor did SCPD take any other action in response to the complaints.

87.     Given the within, Plaintiffs took certain steps to address the Defendants' coordinated attacks.

88.     First, Plaintiffs attempted to sell off their business assets and to get out of the biofuel business.

89.     Simply put, they could not take the anguish, heartache, and mental duress of attempting to run their businesses while the Defendants were trying to put the Plaintiffs out of business with the aid and assistance of Suffolk County employees/police officers and New York State Department of Environmental Conservation employees/police officers .

90.     Plaintiffs also made a complaint regarding the within to the SCPD Internal Affairs Division (hereinafter, "SCPDIAD") about the within and other malfeasance and misfeasance of Defendant Stefanelli.

91.     Through counsel, Plaintiffs caused a letter to be sent to the SCPDIAD.  A true and accurate copy of the letter sent on behalf of Plaintiffs to SCPDIAD is attached hereto as Exhibit C.

92.     In response, SCPDIAD contacted counsel for Plaintiffs first by letter, then by telephone conference, and informed Plaintiffs, through counsel, that SCPDIAD would contact counsel to schedule an interview of Plaintiffs in connection with the allegations against Defendant Stefanelli.

93.    Thereafter, through and including the date of this Complaint, SCPDIAD has not interviewed nor sought to schedule an interview of Plaintiffs in connection herewith.

94.    On an unknown date shortly after Plaintiffs sent the SCPDIAD the letter attached hereto as Exhibit C, and upon information and belief, Defendant Stefanelli was informed of the contents of the letter attached hereto as Exhibit C by one or more fellow SCPD and/or SCPDIAD police officers.

95.    In response and in retaliation, and upon information and belief, Defendant Stefanelli wrote a letter (hereinafter, the "Letter") and provided copies of same to fellow police officers at the SCPD by leaving the Letter on the windshields of the police vehicles parked in the SCPD police parking lot in one or more Precincts where Defendant Stefanelli works.

96.    Upon information and belief, Defendant Stefanelli made certain representations in the Letter, directly and/or indirectly, which included the following:

      A.  That Defendant ESI was to be protected by the SCPD; and

      B.  That Defendant Stefanelli would provide a sworn Affidavit alleging first hand knowledge of alleged criminal wrongdoing by Plaintiffs and/or one or both of their businesses; and

      C.  That Defendant Stefanelli would provide a complaint alleging first hand knowledge of criminal wrongdoing allegedly committed by Plaintiffs to any fellow officers to assist with criminal prosecution of Plaintiffs and/or one or both of their businesses; and

      D.  That Plaintiffs individually and/or by and through one or more of their businesses were stealing ESI's vegetable waste oil and/or ESI's containers.

97.    In fact, at no time has Defendant Stefanelli ever possessed first hand knowledge of criminal wrongdoing or theft by either Plaintiff or their businesses.

17

98.     Instead, Defendant Stefanelli wrote the Letter to his fellow SCPD police officers for the purpose, *inter alia,* of helping Defendant ESI and the Parisi Defendants.

99.     Defendant Stefanelli also wrote the Letter to his fellow SCPD police officers for the purpose, *inter alia,* of harming Plaintiffs and their businesses.

100.    As of the spring of 2012, Defendant Stefanelli on the one hand, and Defendant ESI and the Parisi Defendants on the other hand, maintained relationships since or before 2010.

101.    During the two or more years leading up to the spring of 2012, Defendant Stefanelli on the one hand, and Defendants Joseph Parisi and David Parisi on the other hand were friends and maintained a friendship.

102.    During the two or more years leading up to the spring of 2012, Defendant Stefanelli maintained a professional relationship with Defendant ESI, Joseph Parisi, and David Parisi given that Stefanelli worked for and with Defendant ESI, Joseph Parisi and David Parisi.

103.    By and during the spring of 2012, Plaintiffs were faced with the following facts: They believed that ESI and the Parisi Defendants had stolen and were stealing and converting for their own use containers, oil, locks, and customers rightfully belonging to Plaintiffs and their businesses; ESI was ignoring complaints made by and for Plaintiffs for ESI to leave Plaintiffs' containers, oil, and customers alone; ESI was being so bold as to actually send letters, occasionally, admitting that they took customers and containers, and then allowing Plaintiffs to come to the ESI plant and take empty containers back; one or more criminal charges had been brought and were and are pending against Plaintiff James C. Naples based solely on the allegation(s) of the Parisi Defendants by

and through Defendant Stefanelli; one or more criminal charges against James C. Naples were brought absent any probable cause or due process; all criminal charges were brought without any warrants being obtained by the issuing Departments; an order was given by ECPD to cease operations of Plaintiffs' waste vegetable oil storage at Plaintiffs' garage in Center Moriches after one or more ECPD officers were sent to Plaintiff's garage by one or more of the co-Defendants herein, and absent any probable cause, warrants, or due process; complaints by Plaintiffs to SCPD alleging the within and other misconduct by Defendants were ignored and no criminal charges ever issued against the complained of Defendants; complaints to SCPDIAD by counsel for Plaintiffs alleging the within and other misconduct by Defendants were ignored and instead revealed to Defendant Stefanelli; SCPDIAD never even took statements from Plaintiffs in connection with the complaint made by counsel on behalf of Plaintiffs; complaints to ESI and the Parisi Defendants alleging misconduct and demanding that ESI and the Parisi Defendants cease interference with Plaintiffs' and their businesses were ignored; and the Letter was circulated amongst SCPD by Defendant Stefanelli as retaliation against Plaintiffs and for the direct and proximate purpose of helping ESI's and the Parisis' business and hurting Plaintiffs and one or both of their businesses.

104.    Given the within, Plaintiffs were trying to sell their biofuel businesses and/or biofuel assets, felt that they were forced by the Defendants to do so, and were doing so under less than ideal economic circumstances.

105.    Plaintiffs desired to sell their assets connected to the biofuel business given the facts contained in paragraph 103, *supra,* and would not have sold their business assets but for the facts contained herein.

106.    During May, 2012, Plaintiffs sold their assets in the biofuel business and exited the industry.

107.    This sale was forced by the Defendants under the circumstances; the Plaintiffs were forced from their chosen profession by the within actions and inactions of Defendants.  But for the within and other actions of the Defendants, Plaintiffs never would have left the biofuel rendering businesses.

108.    During June, 2012, shortly after the sale of Plaintiffs' assets but before it was publicly known that Plaintiffs had left the biofuel businesses, Defendant Stefanelli approached the Plaintiffs during breakfast at a local diner.

109.    At all times during this meeting (hereinafter, the "Meeting"), Defendant Stefanelli was in full uniform and on duty; at all times during this Meeting, Defendant Stefanelli did not know that Plaintiffs had left the biofuel business in the days leading up to the Meeting.

110.    During this Meeting, Defendant Stefanelli indicated and made certain representations and admissions, directly and indirectly to Plaintiffs, including, but not limited to:

> A.  That he, Stefanelli, conducted investigations on behalf of ESI in conjunction with other police officers for the purpose of benefitting ESI;

> B.  That he, Stefanelli, was and is on "a first name basis" with a (senior) four star chief in the SCPD;

> C.  That he, Stefanelli, "hired guys" (meaning other police officers) for ESI while employed by and for ESI;

> D.  That "a lot of things went on" (meaning illegal activities) while he, Stefanelli, was employed by ESI;

> E.  That he, Stefanelli, stood up to a "wise guy" while employed at ESI;

F.  That ESI used to have "all these different" police officers watching on their behalf, but as of the day of the Meeting, were down to "just one guy on the street" to help ESI "catch them";

G.  That he, Stefanelli, is doing "a lot of other stuff now";

H.  That he, Stefanelli, "followed oil trucks at 80 miles per hour" on the LIE Expressway on behalf of ESI;

I.  That he, Stefanelli, "followed somebody in Manhattan all day" on behalf of ESI;

J.  That he, Stefanelli, "sees police reports" pertaining to the biofuel business;

K.  That he, Stefanelli, "locked up" someone on behalf of ESI;

L.  That he, Stefanelli, "did a lot of good stuff" for Defendant Joseph Parisi; and

M.  That he, Stefanelli, was "watching a building on the Hempstead Turnpike" with other police officers on behalf of ESI.

111.    The statements referenced in the preceding paragraph and other statements made at the Meeting were made and intended by Defendant Stefanelli to intimidate and harm Plaintiffs.

112.    In fact, the statements referenced in paragraph 110 and other statements made at the Meeting by Defendant Stefanelli did intimidate and anguish Plaintiffs.

113.    At all times relevant hereto, the within and other acts and omissions of the Defendants were committed in conspiracy with each other.

114.    At all times relevant hereto, the within and other acts and omissions of the Defendants were intentional and knowing.

115.    At all times relevant hereto, the within and other acts and omissions of the Defendants were committed jointly and severally.

116.     At all times relevant hereto, the within and other acts and omissions were committed by the Defendants for the direct, sole, and proximate purpose of harming Plaintiffs, their livelihoods, their property, their employment, and their businesses.

117.     At all times relevant hereto, the within and other acts and omissions committed by the Defendants did affect the Plaintiffs, their livelihoods, their property, their employment, and their businesses.

118.     At all times relevant hereto, the within and other acts and omissions committed by the Defendants were made in furtherance of a criminal enterprise utilizing, *inter alia,* extortion, intimidation, thefts, slander, libel, conversion, intentional/tortious infliction of emotional distress, intentional/tortious interference with various relations, violation of Constitutional rights, corrupt police officers on the enterprise's (cash/laundered) payroll, wrongful arrests coordinated amongst the criminal enterprise, unfair business practices, fraud, antitrust violations, and other illegal acts and omissions to launder money, avoid lawfully due state and federal taxes in the process, and to corner an identifiable waste vegetable and cooking oil market utilized for the Long Island biofuel and biofeed industry, and to illegally eliminate competition within those markets.

119.     In fact, as a direct and proximate result of the above and within and other acts and omissions committed by the Defendants, Plaintiffs were forced to sell off their business assets and exit their chosen professions in and around their lifelong home of Suffolk County, New York.

120.     As a direct and proximate result of the within and other acts and omissions committed by the Defendants, Island Biofuel and JNS are out of business and have been left as shell corporations with no assets.

121.    By the within and other acts and omissions, Defendants have caused and continue to cause great emotional harm and anguish to Plaintiffs, and indirectly, to their families, which has served to only magnify the harm to Plaintiffs.

122.    By the within and other acts and omissions, Defendants have violated and continue to violate Plaintiffs' Constitutional rights, including, but not limited to, the loss of their property, employment, businesses, happiness, liberty, and livelihoods absent Due Process, absent probable cause, and pursuant to unreasonable and warrantless searches and seizures.

123.    By the within and other acts and omissions, Defendants have caused and continue to cause Plaintiffs harm, including, but not limited to, the loss of their property, their employment, their businesses, and health insurance.

124.    By the within and other acts and omissions, Defendants have caused and continue to cause Plaintiffs harm including the lost value of their businesses, the lost value of their assets, the loss of income and benefits from their businesses and assets, lost appreciation to their assets and businesses, other economic harm relating to the loss of their businesses, lost and stolen containers, oil, and customers, and other losses and harm.

125.    By the within and other acts and omissions, Defendants have caused and continue to cause Plaintiffs great emotional pain, suffering and anguish.

126.    By the within and other acts and omissions, Defendants forced the Plaintiffs out of the Long Island biofuel industry and biofuel rendering markets in violation of the New York State Antitrust Law(s).

127.    By the within and other acts and omissions, Defendants committed unfair business practices in direct violation of the New York State Consumer Protection Act.

128.    By the within and other acts and omissions, including, but not limited to verbal and written (published) false accusations of Defendants against Plaintiffs of illegal and/or criminal activity including false allegations of theft made by Defendants against Plaintiffs, Defendants have committed slander and libel against Plaintiffs.

129.    By the within and other acts of Defendants, Defendants have committed theft against Plaintiffs of their waste vegetable oil containers, waste vegetable oil, and locks in violation of the within cited New York State and U.S. Federal laws.

130.    By the within and other acts of Defendants, Defendants have committed extortion and fraud against Plaintiffs in violation of the within cited New York State and U.S. Federal laws by causing charges to issue against Plaintiff James C. Naples and against Plaintiffs' vegetable oil storage facility absent due process and absent probable cause, and by threatening Plaintiffs by and through the circulation of the Letter, and by threatening Plaintiffs by and through statements and admissions made at the Meeting.

131.    Upon information and belief, and by the within and other acts and omissions committed by Defendants, Defendants committed the within violations in furtherance of a money laundering scheme which included the payment of cash to Defendant Stefanelli and other John Doe Defendants/police officers in return for assistance to ESI with its business; this money laundering scheme is in violation of the within cited New York State and U.S. Federal laws, as well as in violation of New York State and U.S. Federal tax laws, for the direct and proximate purpose of benefitting Defendants.

132.    Upon information and belief, in carrying out the money laundering scheme referenced in the previous paragraph, the Defendants avoided personal and one or more

various business taxes imposed by New York State and U.S. Federal law, for the direct and proximate purpose of benefitting Defendants..

133.    By the within and other acts and omissions including theft, extortion, and money laundering, Defendants have violated 18 U.S.C., section 1961, *et seq.*, the Racketeer Influenced and Corrupt Organizations Act (hereinafter, "RICO").

134.    By the within and other acts and omissions, including Defendants' violations of the Plaintiffs' Constitutional Rights; the absence of due process and probable cause in connection with the allegations of wrongdoing against Plaintiffs and Island Biofuel; wrongful arrests, the illegal and warrantless seizure and search of Plaintiffs' property absent due process and probable cause; and the Defendants' violations of the U.S. Federal RICO Act; all while acting under the color of authority, the Defendants have also violated one or more provisions of 42 U.S.C. section 1983.

135.    By the within and other acts and omissions, including the Defendant SCPD's failure to act on repeated notifications of wrongdoing by Defendant Stefanelli and/or other SCPD police officers, one or more John Doe Defendant police officers, the SCPD, and the ECPD have failed and continue to fail to adequately hire, train and supervise the within named/Defendant police officers on their respective departments, and have specifically and negligently hired, trained and supervised Defendant Stefanelli and one or more other John Doe police officers.

136.    By the within and other acts and omissions, Defendants Stefanelli, SCPD, ECPD, and certain unknown John Doe police officers have wrongfully arrested, ticketed, and prosecuted Plaintiff James C. Naples and Island Biofuel absent due process and absent probable cause.

137.    By the within and other acts and omissions, Defendants have stolen and converted the containers, oil, and customers of Plaintiffs to the exclusive use by ESI.

138.    By the within and other acts and omissions, Defendants have intentionally, negligently, and/or recklessly inflicted emotional distress upon Plaintiffs.

139.    By the within and other acts and omissions, Defendants have intentionally, negligently, and/or recklessly interfered with Plaintiffs' advantageous, business, and contractual relations.

140.    By the within and other acts and omissions, the Defendants have engaged in a criminal enterprise and criminal activities affecting interstate commerce.

141.    In addition to the within, there are facts and evidence peculiarly and solely in the possession of Defendants and not within the possession, custody or control of Plaintiffs that shall further support the instant Verified Complaint on behalf of Plaintiffs upon discovery.

## AS AND FOR A FIRST CAUSE OF ACTION: VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS AGAINST ALL DEFENDANTS

142.    Plaintiffs restate each of the preceding paragraphs as if specifically rewritten here.

143.    At all times relevant hereto, Defendants were acting in a conspiracy to help Defendant ESI and the Parisi Defendants, and to harm Plaintiffs.

144.    By the within and other acts and omissions, Defendants violated Plaintiffs' rights granted under and pursuant to the United States Constitution.

145.    Such acts and omissions as set forth herein were knowing, intentional, and/or so reckless as to offend normal senses and sensibilities.

146.    Such acts and omissions that violate the United States Constitution include, but are not limited to, the following:

A.  Twice Arresting Plaintiff James C. Naples for allegedly cutting a ten ($10.00) lock absent due process, absent any warrants, absent any Miranda warnings, and absent probable cause;

B.  Charging Plaintiff James C. Naples and/or Island Biofuel with one or more civil and/or criminal violations in connection with the vegetable oil storage garage and ordering Plaintiffs to close said facility in the absence of due process and probable cause;

C.  Illegally searching and seizing the vegetable oil storage facility absent any warrant, absent due process, and absent probable cause;

D.  Depriving the Plaintiffs' of their property, employment, businesses, happiness, liberty, and livelihoods absent due process, absent probable cause, pursuant to unreasonable and warrantless searches and seizures, and pursuant to a callous pattern of intimidation, extortion, theft, and other violations set forth herein;

E.  Depriving Plaintiffs of their property, employment, businesses, happiness, liberty, and livelihoods by and through ignoring Plaintiffs' direct and indirect complaints and pleas for help against the Defendants, depriving Plaintiffs of due process;

F.  Depriving Plaintiffs of their vegetable oil containers, vegetable oil contained therein, and locks absent due process, pursuant to illegal searches and seizures; pursuant to theft, conversion, and fraud, and in furtherance of a money laundering scheme;

G.  Threatening and intimidating Plaintiffs with the Letter and certain statements directly made to the Plaintiffs during the Meeting that lead directly and proximately to the loss of Plaintiffs' property, employment, businesses, happiness, liberty, and livelihoods absent due process, absent probable cause, and pursuant to unreasonable and warrantless searches and seizures; and

H.  Acting under the color of authority while committing the within and other acts and omissions, all in direct violation of 42 U.S.C. section 1983, *et seq*.

147.    By the within and other acts and omissions, Defendants have caused and continue to cause Plaintiffs harm, including, but not limited to, the loss of their property, their employment, their businesses, and health insurance.

148.    By the within and other acts and omissions, Defendants have caused and continue to cause Plaintiffs harm including, but not limited to, the lost value of their businesses, the lost value of their assets, the loss of income and benefits from their businesses and assets, and lost appreciation to their assets and businesses.

149.    By the within and other acts and omissions, Defendants have caused and continue to cause Plaintiffs great emotional pain, suffering and anguish.

WHEREFORE, as a direct and proximate result of the Defendants' violations of Plaintiffs' Constitutional rights, Plaintiffs have suffered and continue to suffer harm and damages, economic loss, past and future earnings, emotional distress and great anguish, compensatory damages, pecuniary damages, and other losses set forth herein and in an amount to be determined at trial, but not less than twenty million ($20,000.000.00) dollars, plus such other and further relief as is necessary and just.

## AS AND FOR A SECOND CAUSE OF ACTION: VIOLATION OF 18 U.S.C., SECTION 1961, *et seq.,* (RICO) AGAINST ALL DEFENDANTS

150.    Plaintiffs restate each of the preceding paragraphs as if specifically rewritten here.

151.    At all times relevant hereto, Defendants were acting in a conspiracy to help Defendant ESI and the Parisi Defendants, and to harm Plaintiffs.

152.    The within conspiracy included effectuating a scheme devised and concocted by Defendants Stefanelli, Joseph Parisi, and David Parisi, to knowingly and intentionally commit various offenses against Plaintiffs, for the direct and proximate purposes of eliminating Plaintiffs and their businesses from competition to ESI, Joseph Parisi, and David Parisi, and for furthering a money laundering scheme.

153.    At all times relevant hereto, the within and other acts and omissions committed by the Defendants were made in furtherance of a criminal enterprise utilizing, *inter alia*, extortion, intimidation, thefts, slander, libel, conversion, intentional/tortious infliction of emotional distress, intentional/tortious interference with various relations, violation of Constitutional rights, corrupt police officers on the enterprise's (cash/laundered) payroll, wrongful arrests coordinated amongst the criminal enterprise, unfair business practices, fraud, antitrust violations, and other illegal acts and omissions to launder money, avoid lawfully due state and federal taxes in the process, and to corner an identifiable waste vegetable and cooking oil market utilized for the Long Island biofuel and biofeed industry, and to illegally eliminate competition within those markets.

154.    The conspiracy and pattern of racketeering activity as committed by the Defendants against Plaintiffs included, but was not limited to, the following:

   A.  Defendants stole and converted vegetable oil containers, vegetable oil in said containers, certain locks, and Plaintiffs' customers for the use and benefit of Defendants ESI, Joseph Parisi, and David Parisi;

   B.  Defendants extorted and intimidated Plaintiffs by and through Defendant Stefanelli, SCPD, and ESPC, and various unknown John Doe police officers belonging to SCPD and ESPC by the within statements threatening Plaintiffs in the Meeting; by circulating the Letter amongst the Defendants; by issuing charges/tickets against James C. Naples and Island Biofuel absent due process and probable cause; by arresting James C. Naples absent due process and probable cause; by ordering the closing of the vegetable oil storage garage absent due process and probable cause and pursuant to a warrantless search and unreasonable seizure; by informing Defendant Stefanelli of the SCPDIAD investigation; by taking no action against any of the offending police officers or in response to complaints made by and on behalf of Plaintiffs; by taking action on behalf of ESI, Joseph Parisi and David Parisi against Plaintiffs, including the forced closing of the vegetable oil storage garage, the forced sale of Plaintiffs' property, and the issuance of one or more criminal charges and/or civil violations against James C. Naples and Island Biofuel;

C. The Defendants knowingly and intentionally forced Plaintiffs out of business to the detriment of Plaintiffs and to the benefit of ESI, Joseph Parisi and David Parisi; and

D. The Defendants attempted to commit the within pattern of racketeering and illegal activities against others involved in the Long Island biofuel industry including, but not limited to, Island Green rendering and/or Recycle Green rendering.

155.    By the above and other acts, Defendants acted as "racketeers" to benefit the biofuel enterprise all were participating in, and by the above and other acts and omissions Defendants were participating in racketeering activity as defined by RICO.

156.    Part of the enterprise's illegal activity included the laundering of money for the benefit of the enterprise members, including ESI, Joseph Parisi, David Parisi, Philip Stefanelli, and one or more John Doe officers also participating in the scheme.

157.    Upon information and belief, the enterprise benefitted, *inter alia,* by cash payments to the members designed to avoid personal and business taxes, both state and federal, on income to the enterprise.

158.    Upon information and belief, the Defendants invested money they were making from the scheme to empower ESI and corner the Long Island biofuel market back into the enterprise; each of the Defendants received money to continue the enterprise's efforts.

159.    Upon information and belief, the Defendants conducted or participated in the affairs of the enterprise through the within pattern of racketeering activity.

160.    Upon information and belief, the Defendants acquired or maintained an interest in, or control over, the enterprise through the within pattern of racketeering activity.

161.    By the within and other acts and omissions, Defendants participated in a criminal enterprise with an unknown number of members designed to empower Defendant ESI to

corner the biofuel rendering market on Long Island, New York, and particularly in Suffolk County, New York.

162.    The Defendants and all members of the enterprise benefitted financially from their efforts in unknown amounts of money.

163.    The full facts and evidence demonstrating the biofuel enterprise at issue and the full extent of the Defendants' acts, omissions, and participation is known more fully and peculiarly by the enterprise and the Defendants.

164.    By the within and other acts and omissions, Defendants participated in a pattern of conduct that constitutes racketeering as defined by RICO.

165.    By the within and other acts and omissions, Defendants' racketeering was intended to harm, *inter alia*, Plaintiffs, their businesses, their property, their assets, and their livelihood/employment.

166.    By the within and other acts and omissions, Defendants' racketeering did harm Plaintiffs, their businesses, their property, their assets, and their livelihood/employment, and caused great emotional distress and anguish to Plaintiffs.

167.    At all times relevant hereto, the parties participation in the biofuel industry included participation in interstate commerce, although the specific area/market that Defendants were attempting to corner was the Long Island and/or Suffolk County, New York biofuel market(s).

168.    By the within and other acts and omissions, including the failure to act on Plaintiffs' complaints, the police officer Defendants, including Stefanelli and John Does, the SCPD, and the ECPD, obstructed justice within the meaning of a violation under the RICO Act.

169.    By the within and other acts and omissions, the Defendants tampered with victims of the within acts and omissions, specifically by and through the issuance, distribution, and circulation of the Letter, and by and through the conduct of the Meeting, all within the prohibited acts as specifically referenced in the RICO Act.

170.    By the within and other acts and omissions, the Defendants have interfered with commerce as conducted by Plaintiffs by and through their biofuel businesses, all in violation of and within the meaning of prohibited acts as specifically referenced in the RICO Act.

171.    By the within and other acts and omissions, Defendants have violated the RICO Act, 18 U.S.C., section 1961, *et seq.*

WHEREFORE, as a direct and proximate result of the Defendants' violations of the RICO Act, 18 U.S.C., section 1961, *et seq.*, Plaintiffs have suffered and continue to suffer harm and damages, economic loss, past and future earnings, emotional distress and great anguish, compensatory damages, pecuniary damages, and other losses set forth herein and in an amount to be determined at trial, but not less than twenty million ($20,000.000.00) dollars.  In addition, pursuant to the RICO Act, Plaintiffs seek a trebling of all damages awarded hereunder, plus an award of all attorney fees and such other and further relief as may be necessary and just.

## AS AND FOR A THIRD CAUSE OF ACTION:
## VIOLATION OF 42 U.S.C. SECTION 1983
## AGAINST ALL DEFENDANTS

172.    Plaintiffs restate each of the preceding paragraphs as if specifically rewritten here.

173.    By the above and other acts and omissions, Defendants have violated Plaintiffs' rights granted under and pursuant to the United States Constitution.

174.    In addition, by the above and other acts and omissions, Defendants have violated Plaintiffs' rights as protected by 18 U.S.C. section 1961, *et seq.,* the RICO Act.

175.    At all times relevant hereto, Defendants were acting knowingly, intentionally, impermissibly, and illegally in violating Plaintiffs' Constitutional rights and those rights protected by and through the RICO Act as set forth, *supra.*

176.    At all times relevant hereto, Defendants acted under the color of authority and under color of one or more statutes while violating Plaintiffs' Constitutional and RICO protected rights as set forth, *supra.*

177.    By the within and other acts and omissions, Defendants violated 42 U.S.C. section 1983 by and through their violations of Plaintiffs' Constitutional rights and rights protected pursuant to the RICO Act.

WHEREFORE, as a direct and proximate result of the Defendants' violations of the 42 U.S.C. section 1983, for violating Plaintiffs' Constitutional rights and rights otherwise protected under the RICO Act, 18 U.S.C. section 1961, *et seq.,* Plaintiffs have suffered and continue to suffer harm and damages, economic loss, past and future earnings, emotional distress and great anguish, compensatory damages, pecuniary damages, and other losses set forth herein and in an amount to be determined at trial, but not less than twenty million ($20,000.000.00) dollars.  In addition, pursuant to the rights granted under 42 U.S.C. section 1983, *et seq.,* Plaintiffs seek punitive damages in an amount to be determined at trial, but not less than one hundred million ($100,000,000.00) dollars, plus an award of all attorney fees and such other and further relief as may be necessary and just.