UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
JAMES V. NAPLES and JAMES C. NAPLES,

                         Plaintiffs,

          -against-

PHILIP STEFANELLI; JOSEPH PARISI;              MEMORANDUM & ORDER
DAVID PARISI; ENVIRONMENTAL                    12-CV-4460(JS)(ARL)
SERVICES, INC.; SUFFOLK COUNTY (NEW
YORK) POLICE DEPARTMENT; COUNTY OF
SUFFOLK (NEW YORK); NEW YORK STATE
DEPARTMENT OF ENVIRONMENTAL
CONSERVATION POLICE DEPARTMENT;
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION; STATE OF
NEW YORK, and JOHN DOES 1-100,

                         Defendants.
--------------------------------------X
APPEARANCES
For Plaintiffs:          Harry R. Thomasson, Jr., Esq.
                         Law Office of Harry Thomasson
                         3280 Sunrise Highway, Suite 112
                         Wantagh, NY 11793


For Defendants:
Stefanelli, Suffolk      Arlene S. Zwilling, Esq.
County Police Dep't,     Suffolk County Attorney's Office
Suffolk County           H. Lee Dennison Building, 5th Floor
                         100 Veterans Memorial Highway
                         Hauppauge, NY 11788


Joseph & David Parisi,   Glen B. Gruder, Esq.
Envtl. Servs., Inc.      Certilman Balin Adler & Hyman LLP
                         1393 Veterans Memorial Highway, Suite 301s
                         Hauppauge, NY 11788


                         Paul B. Sweeney, Esq.
                         Certilman Balin Adler & Hyman LLP
                         90 Merrick Avenue
                         East Meadow, NY 11554

```
State of New York,        Gregory J. Nolan, Esq.
N.Y. State Dep't of       N.Y. State Office of the Attorney General
Envtl. Conservation       Environmental Protection Bureau
Police Dep't, & N.Y.      120 Broadway
State Dep't of Envt.      New York, NY 10271
Conservation
```

SEYBERT, District Judge:

   Plaintiffs James V. Naples ("James") and James C. Naples ("Jimmy," and together with James, "Plaintiffs") commenced this action on September 6, 2012 against Defendants Suffolk County (the "County"), the County Police Department, and Philip Stefanelli (collectively, the "County Defendants"), the State of New York, the New York State Department of Environmental Conservation ("DEC"), and the DEC Police Department (collectively, the "State Defendants"), Environmental Services, Inc. ("ESI"), Joseph Parisi, and David Parisi (together with ESI, the "ESI Defendants"), alleging violations of their constitutional rights pursuant to 42 U.S.C. § 1983, of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and of various New York state statutory and common laws arising out of an alleged conspiracy to drive Plaintiffs' corporations out of business.

   Pending before the Court are the following motions: (1) the County Defendants' partial motion to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Docket Entry 13); (2) the State

Defendants' motion to dismiss on the grounds of sovereign immunity under to Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim under Rule 12(b)(6) (Docket Entry 18); and (3) the ESI Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) (Docket Entry 19).  For the following reasons, the County Defendants' motion is GRANTED IN PART and DENIED IN PART, the State Defendants' motion is GRANTED, and the ESI Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[1]

James and Jimmy Naples, who are father and son respectively, at all times relevant hereto, were the owners and operators of Island Biofuel, LLC and JNS Industries, LLC (together, the "Naples Corporations").  (Am. Compl. ¶¶ 3, 4.)  Island Biofuel is a domestic limited liability corporation that "servic[es] the biofuel and biofeed industries by and through, inter alia, the collection and re-sale of waste vegetable/kitchen oil."  (Am. Compl. ¶ 3.)  JNS Industries is a limited liability corporation that provides rendering and trucking services to the biofuel and biofeed industries in conjunction with Island Biofuel.  (Am. Compl. ¶ 3.)  The Naples Corporations were formed by Plaintiffs in 2006,

---

[1] The following facts are drawn from Plaintiffs' Amended Complaint and the documents attached thereto and referenced therein and are presumed to be true for the purposes of this Memorandum and Order.

and they operate out of a building in Center Moriches, New York that contains offices, a storage facility, and a garage. (Am. Compl. ¶¶ 3, 16.)

Plaintiffs, through the Naples Corporations, would enter into contracts with restaurants on Long Island to collect their used vegetable and other kitchen oil. Upon entering into a contract with a new customer, Plaintiffs would provide the restaurant with containers to store its used oil pending Plaintiffs' scheduled pick-up. (See Am. Compl. ¶ 29.) Each container had a lock, and all of Plaintiffs' locks used the same key. (See Am. Compl. ¶¶ 29, 32.)

Defendant ESI is a domestic corporation, owned and operated by Defendants Joseph and David Parisi, that is also engaged in rendering to the biofuel industry on Long Island. (Am. Compl. ¶¶ 6-8, 17.)[2]

I.  ESI's Alleged Theft of Plaintiffs' Customers, Containers, Oil, and Locks

According to the Amended Complaint, in or around 2010, ESI began targeting Plaintiffs' customers and inducing them to breach their contracts with Plaintiffs and hire ESI instead. (Am. Compl. ¶ 18.) If ESI was successful in convincing one of Plaintiffs' customers to sign a contract with ESI, ESI would remove

---

[2] According to the Amended Complaint, although ESI was formed in or around March 1983, it "only commenced rendering to the biofuel industry during the 2000's." (Am. Compl. ¶ 17.)

Plaintiffs' containers and locks from the premises and replace them with ESI's containers and locks.   (Am. Compl. ¶ 20.) Occasionally, ESI would inform Plaintiffs via letter that it was in possession of their containers (Am. Compl. ¶ 20 & Ex. A), but "they were always offered to Plaintiffs for pick up while empty, drained by ESI of Plaintiffs' contracted waste vegetable oil" (Am. Compl. ¶ 21).   Plaintiffs were not permitted to retrieve their containers from ESI unless they signed a release.   (Am. Compl. ¶ 82.)   The Amended Complaint further alleges that, at some point in 2011, the ESI Defendants obtained a key to Plaintiffs' locks and "utilized the impermissibly obtained key to siphon the contents of Plaintiffs' containers."   (Am. Compl. ¶ 32; see also id. ¶ 31 (stating that it "became commonplace by 2011" to "find open, undamaged locks at the bottom of near-empty containers").)

        The Amended Complaint estimates that between 2010 and May 2012, the ESI Defendants stole in excess of twenty thousand gallons of oil worth approximately $50,000, containers valued at $15,000, and $100,000 in lost profits from Plaintiffs' customers. (Am. Compl. ¶¶ 23, 27-28.)   Plaintiffs also assert that, even if they retrieved their containers from ESI, the locks were always gone.  (Am. Compl. ¶ 30.)  The Amended Complaint does not, however, estimate the value of those locks.

II.  Jimmy's Arrest and Prosecution

        On or around September 7, 2011, Plaintiff Jimmy Naples was pulled over by one or more Suffolk County police officers, including Defendant Officer Stefanelli, while he was driving a truck to collect waste cooking oil from Plaintiffs' customers. (Am. Compl. ¶ 33; see also ESI Defs. Mot. Ex. 6.)  It is unclear from the Amended Complaint why Jimmy was pulled over, but he was immediately arrested, handcuffed, and locked in the back of a police car for nearly two hours while Suffolk County police officers, including Officer Stefanelli, searched the truck.  (Am. Compl. ¶¶ 34, 38.)  Jimmy was not read his Miranda rights, and the police did not obtain his consent nor did they have a warrant to search his vehicle.  (Am. Compl. ¶¶ 34, 38.)  While conducting their search, the police found a pair of bolt cutters that they seized.[3]  (Am. Compl. ¶ 39.)

        Although Jimmy was handcuffed, he still had access to his cell phone, and he used it to call his father, Plaintiff James Naples, to the scene.  (Am. Compl. ¶¶ 41-42.)  Upon arrival, James attempted to approach Jimmy in the police car, but stopped when he was threatened with arrest by Officer Stefanelli if he did not

---

[3] The Amended Complaint asserts that "[i]t is commonplace in the biofuel industry for collectors of waste vegetable oil to carry bolt cutters to open locks caked in vegetable oil that will not otherwise open."  (Am. Compl. ¶ 40.)

return to his own car.  (Am. Compl. ¶¶ 43-44.)  James complied but remained on the scene.  (Am. Compl. ¶¶ 44-45.)

The timeline of events on September 7, 2011 is somewhat unclear; however, at some point, Officer Stefanelli called Defendant David Parisi to the scene.  (Am. Compl. ¶¶ 36-37, 45, 69.)  This was allegedly witnessed by both James and Jimmy.  (Am. Compl. ¶ 45.)

After their search was complete, Officer Stefanelli uncuffed Jimmy and asked him to drive his truck to the Knights of Columbus up the street.  (Am. Compl. ¶ 46.)  Officer Stefanelli informed Jimmy that he had called the Suffolk County Motor Carrier Safety Division (the "County Safety Division") and that officers from that division would meet him at the Knights of Columbus to perform a more thorough search.  (Am. Compl. ¶ 46.)  Jimmy complied with Officer Stefanelli's request and followed him up the street to the Knights of Columbus parking lot.  (Am. Compl. ¶ 47.)  Eventually officers from both the County Safety Division and the DEC arrived to inspect Jimmy's truck; at some point, Defendant Joseph Parisi also appeared at the site to take pictures.[4]  (Am. Compl. ¶¶ 50-52.)  Plaintiffs believe that Officer Stefanelli also called the DEC and Joseph Parisi to the scene.  (Am. Compl. ¶¶ 69, 74.)

---

[4] It is unclear from the Amended Complaint whether David Parisi was still present at this time.

Island Biofuel was ultimately charged with violating Section 140.00 of New York Vehicle and Traffic Law for operating a commercial vehicle in violation of the state's safety requirements (ESI Defs. Mot. Ex. 6)--specifically, for having a broken windshield wiper blade and an expired "insurance health card" (Am. Compl. ¶ 55). Jimmy was also ordered to drive the truck back to the Naples Corporations' garage in Center Moriches and not to drive the truck again until the wiper blade was fixed. (Am. Compl. ¶ 55.) DEC Officers followed Jimmy back to the Naples Corporations' garage to make sure he complied. (Am. Compl. ¶¶ 55-56.)

Upon arriving at the Naples Corporations' offices, a DEC officer informed Jimmy that he was going to inspect the garage. (Am. Compl. ¶ 57.) He did not have Jimmy's consent, he did not have a warrant, and the garage was not otherwise visible to the public. (Am. Compl. ¶¶ 57, 59, 62.) When Jimmy complained that the DEC "had no right to conduct the inspection," the DEC officer replied that he was "just following orders." (Am. Compl. ¶ 60.) After inspecting the garage, the DEC ordered that the garage be closed, ticketed Jimmy and Biofuel for operating a waste facility without a permit in violation of N.Y. COMP. CODES R & REGS. tit. 6, § 360-1.7(a)(1)(i), and ticketed Biofuel for violating the New York Department of Transportation's regulations governing the safe operation of commercial motor vehicles, N.Y. COMP. CODES R & REGS.

8

tit. 17, § 820.0 et seq. (Am. Compl. ¶¶ 61, 76; ESI Defs. Mot. Ex. 6.) The DEC made several follow-up visits to the garage and storage facility and ultimately informed Plaintiffs that "expensive plans, licenses, and fines totaling tens of thousands of dollars were necessary for [the DEC] to even consider allowing the storage facility to re-open." (Am. Compl. ¶¶ 77-78.)

"Days later," on or around October 13, 2011, Jimmy received a call from the County Police Department's Seventh Precinct (Defendant Stefanelli's precinct), and an unknown officer requested that he report to the precinct "regarding the truck incident." (Am. Compl. ¶¶ 64-65; ESI Defs. Mot. Ex. 6.) When Jimmy arrived, he was re-arrested, booked, and charged with Criminal Mischief in the Fourth Degree in violation of N.Y. PENAL LAW § 145.00 for allegedly cutting a ten dollar lock with bolt cutters. (Am. Compl. ¶ 66; ESI Defs. Mot. Ex. 6.) An unknown officer told Jimmy that "a restaurant owner saw him do it" (Am. Compl. ¶ 66); however, upon appearing in court to defend against the charges, Jimmy was provided with a witness statement signed by David Parisi--not a restaurant owner (Am. Compl. ¶ 67). It appears as though the charges against Jimmy and the Naples Corporations are still pending. (See ESI Defs. Mot. Ex. 6.)

III. The Alleged Conspiracy

After Jimmy's arrest, Plaintiffs went to ESI's headquarters to pick up some of their containers. (Am. Compl.

¶ 79.)  Upon arriving, Plaintiffs "were stunned to see Defendant Stefanelli working at the facility dressed fully in clothing indicating that he was employed by and working for Defendant ESI." (Am. Compl. ¶ 80.)  Plaintiffs assert that Stefanelli was paid in cash by the ESI Defendants to use his influence in the County Police Department to threaten, harass, and intimidate Plaintiffs and the Naples Corporations merely because they were a competitor of ESI.  (Am. Compl. ¶¶ 98-100, 102 & Ex. C.)[5]  They were "furious with the discovery of Defendant Stefanelli's presence," refused to sign the release forms for their containers, and insisted that the County Police Department be called.  (Am. Compl. ¶ 83.)  Stefanelli made a call, and an officer arrived shortly thereafter.  (Am. Compl. ¶ 84.)  He spoke to Stefanelli first and then told Plaintiffs that he would not get involved; if Plaintiffs wanted their container, they would have to sign the release as requested. (Am. Compl. ¶ 84.)

This was not Plaintiffs' only complaint to the County Police Department regarding the ESI Defendants' actions; the County, however, never investigated the complaints or took any action to stop the ESI Defendants' alleged unlawful conduct.  (Am.

---

[5] Apparently, on prior occasions, when Plaintiffs would contact ESI regarding missing containers, their conversations with Joseph Parisi would often deteriorate to arguments where Joseph Parisi would state "you don't know who I am" and "you don't know who protects me."  (Am. Compl. Ex. C.)

Compl. ¶¶ 85-86.)  In fact, on or around April 4, 2012, Plaintiffs (through counsel) submitted a formal complaint to the County Police Department's Internal Affairs Division ("IAD") describing ESI's actions and Defendant Stefanelli's alleged involvement and demanding that the charges against Jimmy and Island Biofuel be dropped.  (Am. Compl. ¶ 91 & Ex. C.)  IAD initially contacted Plaintiffs' counsel to schedule an interview of Plaintiffs; however, no interview was ever conducted.  (Am. Compl. ¶¶ 92-93.)

Apparently, Defendant Stefanelli found out about Plaintiffs' IAD complaint.  (Am. Compl. ¶ 94.)  In response, he circulated a letter to County police officers, which stated that the County Police Department was to protect ESI and that, if anyone saw the Naples Corporations collecting oil, they were to call Defendant Stefanelli immediately.  The letter stated that he had firsthand knowledge that they were cutting locks and stealing oil and would provide a sworn affidavit for petit larceny.  (Am. Compl. ¶ 96; Pls. Opp. Ex. B.)  Plaintiffs deny stealing any oil from the ESI Defendants.  Plaintiffs interpreted Defendant Stefanelli's letter as a threat and retaliation for their IAD complaint.  (Am. Compl. ¶¶ 103-04.)

Plaintiffs ultimately sold their assets and exited the industry in or around May 2012.  (Am. Compl. ¶ 106.)  However, before this was known publicly, Defendant Stefanelli approached Plaintiffs while they were having breakfast one morning at a local

diner.  (Am. Compl. ¶ 108.)  He stated, in sum and substance, that he was and had been employed by ESI to conduct surveillance of ESI's competitors, that there were other police officers involved, and that "a lot of things went on" (which Plaintiffs interpret to mean illegal activity).  (Am. Compl. ¶ 110.)  He was in full uniform and on duty at the time.  (Am. Compl. ¶ 109.)

IV.  <u>Procedural History</u>

        Plaintiffs commenced this action on September 6, 2012. Before any of the defendants answered, Plaintiffs filed an Amended Complaint asserting the following claims for relief:  (1) violations of Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983;[6] (2) violations of RICO; (3) violation of Section 340 of New York's General Business Law (the "Donnelly Act"); (4) violation of Section 349 of New York's Business Law (New York's "Consumer Protection Act"); (5) intentional/negligent infliction of emotional distress; (6) tortious interference with business relations; (7) conversion and theft (against Stefanelli and the ESI Defendants only); (8) fraud and extortion; (9) negligent

---

[6] Plaintiffs actually assert separate causes of action for violations of their constitutional rights and violations of Section 1983.  However, "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  <u>Thomas v. Roach</u>, 165 F.3d 137, 142 (2d Cir. 1999).  Thus, to the extent that Plaintiffs seek additional relief under Section 1983 unrelated to their alleged constitutional violations, those claims are DISMISSED.

hiring, training, and supervision (against the Suffolk County Police Department and the DEC Police Department only); and (10) libel and slander (against all defendants but the DEC Police Department).[7]

The County Defendants moved to dismiss on December 14, 2012, and the State and ESI Defendants filed separate motions to dismiss on January 31, 2013.  (Docket Entries 13, 18-19.) Plaintiffs filed one opposition to all three motions.  (Docket Entry 24.)  Only the State and ESI Defendants filed reply briefs. (Docket Entries 25-26.)  These motions are presently before the Court.

<u>DISCUSSION</u>

Before discussing the merits of the pending motions, the Court must address three preliminary matters.  <u>First</u>, Plaintiffs have stipulated to the dismissal of all claims against the County Police Department and the DEC Police Department (<u>see</u> Thomasson Decl. ¶ 2); accordingly, all claims against those defendants are hereby DISMISSED WITH PREJUDICE.  <u>Second</u>, the Court finds that James lacks standing to bring Section 1983 false arrest and malicious prosecution claims arising out of Jimmy's arrest and prosecution, <u>cf.</u> <u>Morgan v. City of N.Y.</u>, 166 F. Supp. 2d 817, 819

---

[7] Plaintiffs also assert a separate cause of action for attorneys' fees.  However, attorneys' fees are a form of relief, not a ground for relief.

13

(S.D.N.Y. 2001) (finding that a parent lacked standing to bring a Section 1983 claim based on an alleged deprivation of her daughter's rights because "only the person toward whom the state action was directed, and not those incidentally affected may maintain a § 1983 claim" (internal quotation marks and citation omitted)), and those claims are hereby DISMISSED, see, e.g., Cohan v. Movtady, 751 F. Supp. 2d 436, 440 (E.D.N.Y. 2010) (sua sponte dismissing claims for lack of standing).   Third, Plaintiffs repeatedly argue in their opposition brief that it would be "premature to dismiss claims at this early juncture of the case absent discovery of facts peculiarly in the Defendants' possession." (Pls. Opp. 6.)   However, "allowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to 'streamline[] litigation by dispensing with needless discovery and factfinding' where the plaintiff has failed to state a claim under the law." KBL Corp. v. Arnouts, 646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y. 2009) (alteration in original) (quoting Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)); see also Bridgewater v. Taylor, 745 F. Supp. 2d 355, 358 (S.D.N.Y. 2010) ("As a general proposition, a litigant has to state a claim before he or she is entitled to discovery."). Thus, the Court finds this argument to be without merit.

In proceeding to the pending motions, the Court will first discuss the applicable standards of review before turning to the merits of the parties' arguments.

I.   Applicable Standards of Review under the Federal Rules of Civil Procedure

A.   Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, --- U.S. ----, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010). The Court must accept as true the factual allegations contained in the complaint, but it will not draw argumentative inferences in favor of the plaintiff because subject matter jurisdiction must be shown affirmatively. See id.; Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992). The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. Morrison, 547 F.3d at 170.

B.   Rule 12(b)(6)

Pursuant to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under the now well-established Iqbal/Twombly standard, a complaint satisfies Rule 8 only if contains enough allegations of fact to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

This "plausibility standard," which governs motions to dismiss under Rule 12(b)(6), is governed by "[t]wo working principles." Iqbal, 556 U.S. at 670, 678; accord Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009). First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 (a pleading that offers "labels and conclusion" or "naked assertion[s]" devoid of "further factual enhancement" does not satisfy Rule 8). Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific task that requires the reviewing court to

16

draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

In deciding a Rule 12(b)(6) motion to dismiss, the Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). This has been interpreted broadly to include any document attached to the Complaint, any statements or documents incorporated in the Complaint by reference, any document on which the Complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–153 (2d Cir. 2002); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). Consideration of matters beyond those just enumerated requires the conversion of a Rule 12(b)(6) motion to dismiss into one for summary judgment under Rule 56, see FED. R. CIV. P. 12(d); see also Kramer, 937 F.2d at 773; therefore, the Court cannot and will not consider the declarations and other documentary evidence attached to Plaintiffs' opposition papers.

C.   Rule 9(b)

To state a claim sounding in fraud or mistake, Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard: "[A] party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). The Second Circuit has read Rule 9(b) to require that a complaint "(1) specify the statements that the plaintiff contends were

17

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," in order to survive a motion to dismiss.  Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)) (internal quotation marks omitted).  This heightened pleading standard applies to common law fraud claims as well as substantive RICO claims sounding in fraud.  See First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178-79 (2d Cir. 2004).

II.  The Pending Motions to Dismiss

    A.  The County Defendants' Motion

        The County Defendants' partial motion to dismiss only seeks the dismissal of the following claims:  (1) the Section 1983 claims against the County, (2) the RICO claims against the County, and (3) the state law claims against both the County and Stefanelli.[8]  The Court will address the arguments in support of dismissal of each claim separately.

        1.  Section 1983 Claims Against the County

        The County Defendants argue that the Section 1983 claims against the County must be dismissed because Plaintiffs have failed to plead a basis for municipal liability.  The Court agrees.  A

---

[8] The Court notes that the County Defendants have not moved to dismiss the Section 1983 and RICO claims as pled against Stefanelli in his individual capacity.

municipality may not be held liable under Section 1983 for alleged unconstitutional actions committed by its employees solely on the basis of respondeat superior.  Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Rather, "[t]o hold a municipality liable in such an action, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (internal quotation marks and citation omitted); see also Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008) ("[A] plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

To establish the existence of a municipal policy or custom, a plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of the plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge and acquiescence can be implied on the part of the policy-making officials; or (4) a failure by policymakers to

19

properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact within the municipal employees. <u>Sulehria v. City of N.Y.</u>, 670 F. Supp. 2d 288, 320 (S.D.N.Y. 2009); <u>see also Davis v. Lynbrook Police Dep't</u>, 224 F. Supp. 2d 463, 478 (E.D.N.Y. 2002).

Here, Plaintiffs seek to hold the County liable for failing to properly train and/or supervise Defendant Stefanelli and unnamed John Doe officers. (Am. Compl. ¶¶ 222-23.) However, "[t]he mere fact that [Jimmy] was falsely arrested, without more, does not show that the [County]'s training program is inadequate. A training program is not inadequate merely because a few of its graduates deviate from what they were taught." <u>Jenkins v. City of N.Y.</u>, 478 F.3d 76, 95 (2d Cir. 2007). And, here, Plaintiffs have failed to plead any "facts suggesting that the constitutional deprivations they suffered were the consequence of training or supervisory deficiencies." <u>Marte v. N.Y.C. Police Dep't</u>, No. 10-CV-3706, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010).

<u>First</u>, to the extent that Plaintiffs believe that the County Police Department's failure to investigate their complaints about ESI is evidence of a failure to train and/or supervise that resulted in a violation of their constitutional rights (<u>see</u> Am. Compl. ¶ 103), their claim fails as a matter of law because Plaintiffs (or any other crime victim, for that matter) do not have a constitutionally protected right to a government

investigation of alleged wrongdoing, see Harrington v. Cnty. of Suffolk, 607 F.3d 31, 35 (2d Cir. 2010); cf. Town of Castle Rock v. Gonzales, 545 U.S. 748, 767-68, 125 S. Ct. 2796, 162 L. Ed. 2d 658 (2005).

Second, to the extent that Plaintiffs believe that the County Police Department's failure to investigate Plaintiffs' complaint to IAD regarding Defendant Stefanelli states a claim under Monell for inadequate supervision, their claim also fails. Although allegations that a municipality was aware of, but failed to act on, civilian complaints against its police officers may be sufficient to show a municipal policy or custom, cf. Fiacco v. City of Rensselaer, 783 F.2d 319, 328 (2d Cir. 1986) (finding that evidence that a city failed to adequately investigate five civilian complaints of excessive force was sufficient to establish that the city was indifferent to (and thus had a custom of condoning) the use of excessive force), a municipality policy or custom is just one element of a Monell claim.  A plaintiff asserting a claim for municipal liability must also plead and prove that "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Here, Plaintiffs' sole complaint regarding Defendant Stefanelli to IAD occurred after Jimmy's arrest and the allegedly unconstitutional search of the garage, and there are no allegations

suggesting that the County ignored any complaints <u>prior</u> to Jimmy's arrest.   Thus, Plaintiffs have failed to plead facts plausibly suggesting that the County's deliberate indifference caused the alleged constitutional violations.   <u>See, e.g.</u>, <u>Ruffino v. City of Hoover</u>, 891 F. Supp. 2d 1247, 1276 (N.D. Ala. 2012) (rejecting a plaintiff's argument that a city's failure to take any disciplinary action against a police officer who allegedly used excessive force against him established a custom or policy of deliberate indifference to the use of excessive force, stating that "[c]learly, no causal link exists between [the plaintiff]'s injuries resulting from [the officer's use of excessive force] during his arrest and . . . the [c]ity's conduct <u>after</u> his arrest").

<u>Finally</u>, the Amended Complaint's conclusory allegations of inadequate training or supervision are insufficient to defeat a motion to dismiss.   <u>See</u> <u>Triano v. Town of Harrison</u>, 895 F. Supp. 2d 526, 540 (S.D.N.Y. 2012) (collecting cases).

Accordingly, the Court finds that Plaintiffs have failed to state a plausible claim for municipal liability under Section 1983 against the County.[9]   The County Defendants' motion to dismiss

---

[9] Plaintiffs appear to argue that, even if they failed to state a claim, the claims against the County should not be dismissed because the County is necessary to conduct discovery.   (Pls. Opp. 8.)   However, the Federal Rules of Civil Procedure provide for discovery from non-parties, <u>see, e.g.</u>, FED. R. CIV. P. 45, and the notion that a party should be required to defend against a

these claims is GRANTED, and the Section 1983 claims against the County and Stefanelli in his official capacity[10] are DISMISSED WITHOUT PREJUDICE.

> ### 2.   RICO Claims Against the County

The County Defendants argue that the RICO claims against the County must be dismissed because "claims to enforce RICO cannot be pursued against government entities."  (Cnty. Defs. Mot. 6.) The Court agrees.  "'[E]very court in [the Second] Circuit that has considered the issue has held that a municipality cannot form the requisite criminal intent to establish a predicate act, and has therefore dismissed the claim against the municipality.'" Wood v. Inc. Vill. of Patchogue, 311 F. Supp. 2d 344, 354 (E.D.N.Y. 2004) (alterations in original) (quoting Frooks v. Town of Cortlandt, 997 F. Supp. 438, 457 (S.D.N.Y. 1998), aff'd, 182 F.3d 899 (2d Cir. 1999)); see also Nu-Life Constr. Corp. v. N.Y.C. Bd. of Educ., 779 F. Supp. 248, 251-52 (E.D.N.Y. 1991) (collecting cases).  Accordingly, the County Defendants' motion to dismiss the

---

meritless action solely because it is in possession of relevant evidence is absurd.

[10] Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent,'" Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985) (quoting Monell, 436 U.S. at 690 n.55), and courts routinely dismiss official-capacity claims where the plaintiff also sues the municipality, see, e.g., Volpe v. Nassau Cnty., 915 F. Supp. 2d 284, 298 (E.D.N.Y. 2013); Tsotesi v. Bd. of Educ., 258 F. Supp. 2d 336, 338 n.10 (S.D.N.Y. 2003).

RICO claims against the County is GRANTED, and those claims are hereby DISMISSED WITH PREJUDICE.  Further, "because the [County] cannot be held liable under RICO as a matter of law, neither may the [County] employees in their official capacities." Frooks, 997 F. Supp. at 457.  Therefore, all RICO claims against Stefanelli in his official capacity are also DISMISSED WITH PREJUDICE.

### 3. State Law Claims Against All County Defendants

The County Defendants argue that Plaintiffs' state law claims against the County and Stefanelli must be dismissed because the Amended Complaint contains no allegation that Plaintiffs served a notice of claim.  The Court agrees with respect to the claims against the County only.

Section 52 of New York County Law provides that:

> Any claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law.

N.Y. COUNTY LAW § 52(1).  Section 50-e of the General Municipal Law requires a plaintiff to file a notice of claim prior to commencing an action against a municipality and within ninety days of the incident giving rise to the claim.  N.Y. GEN. MUN. LAW § 50-e(1)(a).

To survive a motion to dismiss, a plaintiff must affirmatively plead that a notice of claim was filed.  See N.Y. GEN. MUN. LAW § 50-i(1)(b); see also Horvath v. Daniel, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006).  Here, as the Amended Complaint is void of any allegation that a notice of claim was filed prior to the commencement of this action, the state law claims against the County[11] must be DISMISSED.[12]

With respect to Plaintiffs' state law claims against Defendant Stefanelli, although Section 50-e's notice of claim requirement has been extended to Suffolk County police and peace

---

[11] It is actually somewhat unclear whether the notice of claim requirement applies to Plaintiffs' claims under Sections 340 and 349 of New York's General Business Law.  Sections 50-e and 50-i of the General Municipal Law apply only to claims sounding in tort.  While Section 52 of the County Law is on its face much broader than the General Municipal Law and has been applied to non-tort claims, see, e.g., Feldman v. Nassau Cnty., 349 F. Supp. 2d 528, 539 (E.D.N.Y. 2004) (finding that Section 52 covered employment discrimination claims under New York's Human Rights Law), aff'd, 434 F.3d 177 (2d Cir. 2006), the Court was not able to find any cases applying the notice of claim requirement to claims under the Donnelly Act or New York's Consumer Protection Law.  This was not addressed by either the County Defendants or Plaintiffs in their briefs.  Nonetheless, as the Court finds that Plaintiffs have not stated a claim for relief under the General Business Law, see infra pp. 43-47, the Court need not definitely resolve this issue here.

[12] Plaintiffs argue that they should be permitted to file a late notice of claim or request an extension of time to do so.  (Pls. Opp. 7.)  The federal courts, however, lack authority to permit the late filing of a notice of appeal.  See N.Y. MUN. LAW § 50-e(7) (limiting applications for relief under Section 50-e to New York State Supreme and County courts); see also Horvath, 423 F. Supp. 2d at 424.

officers, see N.Y. GEN. MUN. LAW § 50-m(3), "service of a notice of claim is not a condition precedent to the commencement of an action against a county's employees or agents unless the county is required to indemnify the individual defendants," Costabile v. Cnty. of Westchester, 485 F. Supp. 2d 424, 432 (S.D.N.Y. 2007) (citing N.Y. GEN. MUN. LAW § 50-e(1)(b)).  Whether Stefanelli was acting within the scope of his employment with the County while committing the alleged tortious acts was not briefed by the County Defendants or Plaintiffs, and the Court will not address this issue sua sponte.  Accordingly, to the extent that the County Defendants' motion seeks dismissal of the state law claims against Stefanelli, the motion is DENIED.[13]

B.    The State Defendants' Motion

        The State Defendants move to dismiss the claims asserted against them on that grounds that: (1) they are barred by the Eleventh Amendment and, thus, the Court lacks subject matter jurisdiction and (2) Plaintiffs have otherwise failed to state a claim.  Because the Court finds that Plaintiffs' claims against the State Defendants are barred by the Eleventh Amendment, it will not address the State Defendants' other arguments.

---

[13] The Court notes that this ruling does not preclude the County Defendants from raising (and properly briefing) this issue in a motion for summary judgment.

"The Eleventh Amendment to the Constitution bars suits against a state in federal court unless that state has consented to the litigation or Congress has permissibly enacted legislation specifically overriding the state's immunity." Russell v. Dunston, 896 F.2d 664, 667 (2d Cir. 1990) (citations omitted); see also Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 148 L. Ed. 2d 866 (2001).  This bar also applies to claims against State agencies.  See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993).  Thus, Plaintiffs' claims against the State of New York and the DEC are all barred by the Eleventh Amendment, see Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990) (sovereign immunity bars Section 1983 claims against the State);[14] Gaines v. Tex. Tech Univ., 965 F. Supp. 886, 889 (N.D. Tex. 1997) (collecting cases concluding that RICO does not abrogate states' sovereign immunity);[15] Finn-Verburg v. N.Y. State Dep't of Labor, 122 F. Supp. 2d 329, 335 (N.D.N.Y. 2000) (stating that claims against New York State arising under New York common law were

---

[14] Even if sovereign immunity did not bar Plaintiffs' Section 1983 claims against the State Defendants, these claims would nonetheless fail as a matter of law because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989).

[15] Plaintiffs' RICO claims against the State Defendants are also subject to dismissal for the same reason the RICO claims against the County were dismissed.  See supra Section II.A.2.

barred by sovereign immunity); Papay v. Haselhuhn, No. 07-CV-3858, 2010 WL 4140430, at *2, 10 (S.D.N.Y. Oct. 21, 2010) (dismissing Donnelly Act claims against the New York State Department of Health as barred by sovereign immunity).

Accordingly, the State Defendants' motion to dismiss is GRANTED in its entirety, and all claims against the State Defendants are hereby DISMISSED WITH PREJUDICE.[16]

C.   The ESI Defendants' Motion

The ESI Defendants move to dismiss the Amended Complaint in its entirety for failure to state a claim.  The Court will address the ESI Defendants' argument in support of dismissing each claim separately.

1.   Section 1983 Claims

To prevail on a claim under Section 1983, a plaintiff must establish that: (1) the defendant acted under color of state law and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his or her rights as secured by the Constitution or the laws of the United States.  See Am. Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50, 119 S. Ct. 977, 143 L.

---

[16] Plaintiffs state in their opposition brief that "the DEC itself is incidental to the instant matter" and the "primary issue" is against the DEC's officers.  (Pl. Opp. 5.)  As there are no DEC officers named as defendants in the Amended Complaint, the Court reads this as a concession by Plaintiffs that their claims against the State Defendants should be dismissed.

Ed. 2d 130 (1999). Here, the ESI Defendants argue that the Section 1983 claims against them must be dismissed because: (1) they are not state actors and, thus, not acting under color of state law and (2) Plaintiffs have otherwise failed plead a constitutional violation.

### a.   State Actors

Only in limited circumstances will courts recognize that a private individual may be subject to liability under Section 1983. Plaintiffs here allege that the ESI Defendants acted under color of state law by conspiring with Defendant Stefanelli.[17] "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." Ciambriello, 292 F.3d at 324 (internal quotation marks and citation omitted); see also Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (stating that a Section 1983 conspiracy requires (1) an agreement between state and private

---

[17] There are actually two ways in which a private actor can act "under color of state law" for the purposes of Section 1983: (1) by "willful[ly] participa[ting] in joint activity with the State or its agents," Spear v. Town of W. Hartford, 954 F.2d 63, 68 (2d Cir. 1992) (internal quotation marks and citation omitted), or (2) by conspiring with a state official to violate the plaintiff's constitutional rights, see Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). Here, the Amended Complaint very clearly states that Plaintiffs are asserting a conspiracy theory of liability. (Am. Compl. ¶ 143.) The Court will limit its discussion accordingly.

actors; "(2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages").

The ESI Defendants argue that they did not conspire with Stefanelli because "[t]he law is clear that furnishing information or summoning police officers, even if that information is false . . . or results in the officers taking affirmative action, is not sufficient to constitute joint action with state actors for the purposes of § 1983." (ESI Defs. Mot. 8.)  While this is a correct statement of law, it is somewhat incomplete:  "A private party supplying information or seeking police assistance does not become a state actor . . . <u>unless the police officers were improperly influenced or controlled by the private party</u>." <u>Stewart v. Victoria's Secret Stores, L.L.C.</u>, 851 F. Supp. 2d 442, 446 (E.D.N.Y. 2012) (omission in original) (emphasis added) (internal quotation marks and citation omitted).  Here, the Amended Complaint contains allegations plausibly suggesting that the ESI Defendants paid Defendant Stefanelli to pull Jimmy over and arrest and ticket him.  Such allegations go beyond merely providing information to the police, and the Court finds them sufficient to survive a motion to dismiss.  <u>See, e.g.</u>, <u>Bacquie v. City of N.Y.</u>, No. 99-CV-10951, 2000 WL 1051904, at *2 (S.D.N.Y. July 31, 2000) (finding that a complaint adequately pled that hotel employees conspired with police to falsely arrest the plaintiffs for trespassing, stating

that "[t]he fact that the police officers consulted with the hotel employees and then tried to get the plaintiffs to sign a hotel form whereby they agreed never to enter the hotel again gives rise to an inference that the officers and hotel security were acting in concert").

Accordingly, to the extent that the ESI Defendants move to dismiss the Section 1983 claims for failure to plead state action, their motion is DENIED.

b.   Failure to State a Claim

The ESI Defendants read the Amended Complaint as asserting three distinct claims under Section 1983:  malicious prosecution, false arrest, and illegal search in violation of the Fourth Amendment.[18]

---

[18] The Amended Complaint also appears to assert a claim for violation of Plaintiffs' rights to due process.  (See Am. Compl. ¶ 146.E (stating that Plaintiffs were deprived of "their property, employment, businesses, happiness, liberty, and livelihoods by and through [the County Police Departments'] ignoring Plaintiffs' direct and indirect complaints and pleas for help against the Defendants, depriving Plaintiffs of due process").)  However, Plaintiffs did not raise this claim in opposition to the motions to dismiss; therefore, the Court deems it abandoned.  See Adams v. N.Y. State Educ. Dep't, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (collecting cases).  Further, as the Court stated above, Plaintiffs have no constitutionally protected property interest in the police conducting a proper investigation, see supra p. 20, so the claim is also without merit.

### i.   Malicious Prosecution

The ESI Defendants argue that the malicious prosecution claims must be dismissed because the charges against Jimmy and the Naples Corporations are still pending.  The Court agrees.  To state a claim for malicious prosecution under Section 1983 in New York, a plaintiff must allege:  (1) the commencement of a criminal proceeding, (2) favorable termination of that proceeding, (3) lack of probable cause, (4) the proceedings were instituted with actual malice, and (5) a post-arraignment seizure.  Swartz v. Insogna, 704 F.3d 105, 111-12 (2d Cir. 2013).  Here, the Amended Complaint is void of any allegations plausibly suggesting that the criminal action(s) pending against Jimmy and the Naples Corporations were terminated in their favor.  Accordingly, the ESI Defendants' motion to dismiss these claims is GRANTED, and the malicious prosecution claims against the ESI Defendants are DISMISSED WITHOUT PREJUDICE.

### ii.  False Arrest

The ESI Defendants argue that Jimmy's false arrest claims must be dismissed because the Amended Complaint fails to adequately allege that the arrests lacked probable cause.  The Court disagrees.  Although "[a] § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest," Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002), "[w]here, as here, an arrest is made without a warrant, the existence of

32

probable cause is an affirmative defense that must be proved by the defendant," Mejia v. City of N.Y., 119 F. Supp. 2d 232, 252-53 (E.D.N.Y. 2000) (citing Broughton v. State, 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 95, 335 N.E.2d 310, 315 (1975)); see also Brandon v. City of N.Y., 705 F. Supp. 2d 261, 269 (S.D.N.Y. 2010) ("The defendant has the burden of raising and proving the affirmative defense of probable cause." (internal quotation marks and citation omitted)).  Thus, as the ESI Defendants, not Plaintiffs, bear the burden of pleading and proving a lack of probable cause, the ESI Defendants' motion to dismiss the false arrest claims for failing to so plead must be DENIED.[19]

### iii. Illegal Search

Finally, the ESI Defendants argue that Plaintiffs' Fourth Amendment claim arising out of the search of the garage must be dismissed because: (1) there was probable cause for the

---

[19] Although courts are reluctant to consider affirmative defenses on a pre-answer motion to dismiss, see Johnson ex rel. Johnson v. Cnty. of Nassau, No. 09-CV-4746, 2010 WL 3852032, at *4 (E.D.N.Y. Sept. 27, 2010) ("At the motion to dismiss stage, the Court generally does not consider affirmative defenses."); Ortiz v. City of N.Y., 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("A motion to dismiss is often not the appropriate stage to raise affirmative defenses . . . ."), a defendant may raise an affirmative defense in such a motion so long as the defense appears on the face of the complaint, Pani, 152 F.3d at 71. However, this was not briefed by the ESI Defendants.  Rather, as explained above, the ESI Defendants argue that Plaintiffs failed to plead a lack of probable cause, not that the allegations in the Amended Complaint conclusively establish the existence of probable cause.  The Court will not address whether probable cause appears on the face of the Amended Complaint sua sponte.

search and (2) there is no allegation in the Amended Complaint that they conspired with the police. Neither argument is of any merit. First, even assuming that there was probable cause to search the garage, the existence of probable cause, in and of itself, does not excuse the Fourth Amendment's warrant requirement. Cf. United States v. Levy, 731 F.2d 997, 1000 (2d Cir. 1984) ("A search is presumed to be unreasonable and in violation of the Fourth Amendment unless a warrant is first secured."); Moore v. Vega, 371 F.3d 110, 115 (2d Cir. 2004) ("Absent certain exceptions to the warrant requirement, a warrantless search is per se unreasonable.").[20] Second, the Court has already found that Plaintiffs have sufficiently pled that the ESI Defendants were acting in concert with Defendant Stefanelli, who according to the Amended Complaint "arranged for the [DEC] to inspect and close the garage" (Am. Compl. ¶ 74). See supra pp. 29-30.

---

[20] Although it seems likely that the administrative searches exception to the warrant requirement applies here, see generally Camara v. Mun. Ct. of City & Cnty. of S.F., 387 U.S. 523, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967), see also N.Y. COMP. CODES R & REGS. tit. 17, § 820.0 et seq. (New York Department of Transportation's Motor Carrier Safety Regulations), this exception (or any exception for that matter) was not raised or briefed by the ESI Defendants, and the Court will not discuss its applicability to the present facts sua sponte.

The Court would, however, entertain a pre-discovery, partial motion for summary judgment on Plaintiffs' illegal search claim on this ground.

Accordingly, the ESI Defendants' motion to dismiss this Fourth Amendment claim is DENIED.

2. <u>RICO Claims</u>

The Amended Complaint asserts a cause of action for "violation of 18 U.S.C., Section 1961, <u>et</u> <u>seq.</u> (RICO)," (Am. Compl., Second Cause of Action), but fails to specify under which subsection of 18 U.S.C. § 1962 Plaintiffs are bringing their RICO claims.  Nonetheless, to state any claim under RICO, a plaintiff must allege: (1) a violation of 18 U.S.C. § 1962; (2) an injury to business or property; and (3) causation of the injury by the violation of § 1962.  <u>Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.</u>, 101 F.3d 900, 904 (2d Cir. 1996).  To plead a violation of 18 U.S.C. § 1962,[21] a complaint must assert seven elements:  "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  <u>Moss v. Morgan Stanley</u>,

---

[21] Subsection (a) prohibits the use of income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise engaged in or whose activities affect interstate commerce.  Subsection (b) prohibits the acquisition of any interest in or control of such an enterprise through a pattern of racketeering activity. Subsection (c) prohibits the conduct or participation in the conduct of such an enterprise's affairs through a pattern of racketeering activity.  And subsection (d) prohibits conspiring to do any of the above.  18 U.S.C. § 1962.

Inc., 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962(a)—
(c)).  "The failure of any one element is fatal to a RICO claim."
Scheiner v. Wallace, 832 F. Supp. 687, 699 (S.D.N.Y. 1993).  The
ESI Defendants argue, inter alia, that Plaintiffs have failed to
adequately plead two or more acts constituting a pattern of
racketeering activity.[22]  The Court agrees.

 The Court will first discuss the alleged predicate acts
before turning to whether such acts establish a pattern.

 a.   Racketeering Activity

 "Racketeering activity" is defined as "any act
'chargeable' under several generically described state criminal
laws, any act 'indictable' under numerous specific federal
criminal provisions, including mail and wire fraud, and any
'offense' involving bankruptcy or securities fraud or drug-related
activities that is 'punishable' under federal law."  Sedima,
S.P.R.L. v. Imrex Co., 473 U.S. 479, 481-82, 105 S. Ct. 3275, 87
L. Ed. 2d 346 (1985) (quoting 18 U.S.C. § 1961(1)).  The Amended
Complaint asserts that the following actions of the ESI Defendants
constitute racketeering activity:  stealing Plaintiffs' vegetable
oil and vegetable oil containers (Am. Compl. ¶ 154.A); stealing
Plaintiffs' customers through "extort[ion] and intimidate[ion]"
and thus driving them out of business (Am. Compl. ¶ 154.B); and

---

[22] Plaintiffs do not address this argument in their opposition.

money laundering (Am. Compl. ¶ 156). (See also Am. Compl. ¶ 133 (listing theft, extortion, and money laundering.)[23]

### i. Stealing Plaintiffs' Oil, Containers, and Customers

Not all theft constitutes racketeering activity under RICO; rather, as is relevant here, RICO is limited to robbery and extortion as defined by New York's Penal Law. See 18 U.S.C. § 1961(1)(A) (stating that the only state law crimes that constitute racketeering activity are "murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical").

Robbery is defined by New York Penal Law as "forcible stealing." N.Y. PENAL LAW § 160.00. As the Amended Complaint is void of any allegations of the use or threat of use of physical force, id. ("A person forcibly steals property and commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person . . . ."), Plaintiffs have failed to sufficiently plead a predicate act of robbery.

---

[23] As Plaintiffs are represented by counsel, the Court is limiting its discussion to the predicate acts that were specifically listed in the Amended Complaint and will not engage in a sua sponte fishing expedition to determine what other predicate acts the Amended Complaint might allege if construed liberally. Thus, although Defendants raise (and discredit) mail fraud as a possible predicate act, the Court will not address it here as it was not specifically pled in the Amended Complaint.

Extortion is defined by New York Penal Law as "compel[ling] or induc[ing] another person to deliver . . . property to himself or a third person by means of instilling in him a fear that, if the property is not so delivered, that actor or another will [commit one of the acts enumerated in the statute]."[24] Id. § 155.05(2)(e).  Such acts include:  accusing the individual of a crime or causing criminal charges to be instituted against him and "us[ing] or abus[ing] his position as a public servant by performing some act within or related to his official duties, or by failing or refusing to perform an official duty, in such manner as to affect some person adversely."  Id. § 155.05(2)(e)(iv), (viii).  Here, there are no allegations in the Amended Complaint that Plaintiffs willfully relinquished their oil and containers to the ESI Defendants; rather, they appear to have been taken without Plaintiffs' consent.  There are, however, allegations that plausibly suggest that Plaintiffs gave up certain customers to ESI due to the ESI Defendants' accusing Jimmy of committing a crime and the alleged abuse of Defendant Stefanelli's public office (including both his targeting Plaintiffs at the request of the ESI Defendants and his refusal to investigate Plaintiffs' complaints against the ESI Defendants).  The Court

---

[24] There is no crime of "extortion" under the Penal Law; however, Grand Larceny in the Fourth Degree includes obtaining property by extortion.  Id. § 155.30(6).

finds that these allegations sufficiently plead a predicate act of racketeering activity.  Cf. People v. Spatarella, 34 N.Y.2d 157, 160-62, 356 N.Y.S.2d 566, 567-69, 313 N.E.2d 38, 39-40 (1974) (finding that obtaining a business's customers through threat of physical injury constituted larceny by extortion).

### ii.  Money Laundering

A violation of 18 U.S.C. § 1956 constitutes a predicate act under RICO.  18 U.S.C. § 1961(1)(B).  Section 1956 prohibits an individual from: (1) conducting or attempting to conduct a financial transaction, (2) with knowledge that the property involved in the transaction represents the proceeds of some form of unlawful activity, (3) with the transaction in fact involving the proceeds of specified unlawful activity, and (4) with the intent to promote the carrying on of specified unlawful activity. 18 U.S.C. § 1956(a)(1)(A)(i).  The ESI Defendants assert that the Amended Complaint "makes no specific allegations as to how the ESI Defendants violated the money laundering statutes" but instead relies on wholly conclusory allegations.  (ESI Defs. Mot. 14.) The Court disagrees.  Here, the Amended Complaint asserts that the ESI Defendants used the proceeds that they derived from stealing Plaintiffs' oil, containers, and customers to pay Defendant Stefanelli and other unnamed officers for their continued efforts to extort more customers from Plaintiffs.  (Am. Compl. ¶¶ 131, 154.B.)  These allegations are clearly not conclusory; however,

whether they are sufficient to state a predicate act of money laundering was not briefed by the ESI Defendants and will not be addressed by the Court <u>sua</u> <u>sponte</u>.

Thus, to the extent that the ESI Defendants move to dismiss Plaintiffs' RICO claims for failure to plead racketeering activity, their motion is DENIED.

b.   <u>Pattern</u>

To establish a "pattern of racketeering activity," the predicate acts of racketeering activity must "amount to or pose a threat of continued criminal activity." <u>Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.</u>, 187 F.3d 229, 242 (2d Cir. 1999) (quoting <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)). This continuity requirement "can be satisfied either by showing a 'closed-ended' pattern--a series of related predicate acts extending over a substantial period of time--or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during with the predicate acts were performed." <u>Spool v. World Child Int'l Adoption Agency</u>, 520 F.3d 178, 183 (2d Cir. 2008).

i.   <u>Closed-Ended Continuity</u>

"To satisfy closed-ended continuity, the plaintiff must prove a series of related predicates extending over a substantial period of time." <u>Cofacrèdit</u>, 187 F.3d at 242 (internal quotation

40

marks and citation omitted); accord Spool, 520 F.3d at 184. Although there are a variety of non-dispositive factors relevant to the inquiry of whether closed-ended continuity exists, including "the length of time over which the alleged predicate acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes," GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 467 (2d Cir. 1995), "closed-ended continuity is primarily a temporal concept," Cofacrèdit, 187 F.3d at 242. "Predicate acts extending over a few weeks or months . . . do not satisfy this requirement," H.J. Inc., 492 U.S. at 242, and the Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time,'" Cofacrèdit, 187 F.3d at 242; see also GICC, 67 F.3d at 467-68 (collecting cases).

Here, the predicate acts of extortion could have not begun until on or around September 2011, when Jimmy was arrested by Defendant Stefanelli, as there are no allegations in the Amended Complaint that Plaintiffs were previously threatened with arrest or that Plaintiffs knew that Defendant Stefanelli was abusing his position as a public servant (see Am. Compl. ¶ 80 (stating that Plaintiffs were "stunned" to learn that Defendant Stefanelli was working for ESI after Jimmy's arrest)). Such extortion ended, at the absolute latest, in or around May 2012, when Plaintiffs sold

their business.  Thus, as these acts occurred within an eight month period, Plaintiffs have failed to plead closed-ended continuity.[25]

ii.   Open-Ended Continuity

"To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacrèdit, 187 F.3d at 242.  Here, however, once the ESI Defendants eliminated Plaintiffs' businesses as competitors, "the scheme essentially came to its conclusion."  First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004). There are no allegations in the Amended Complaint to suggest that the scheme continued after the ESI Defendants successfully ran Plaintiffs out of business.[26]  The Second Circuit has held that such an "'inherently terminable' scheme does not imply a threat of continued racketeering activity."  Cofacrèdit, 187 F.3d at 244 (quoting GICC, 67 F.3d at 466).  Thus, the Court finds that the

---

[25] Assuming, arguendo, that Plaintiffs adequately pled predicate acts of money laundering, the money laundering began, at the earliest, in 2010 when ESI began stealing Plaintiffs' containers and ended, at the latest, in 2012 when Plaintiffs sold their business.  As these acts also occurred within a two-year period, they similarly fail to plead closed-ended continuity.

[26] Plaintiffs attach to their opposition brief affidavits suggesting that the ESI Defendants targeted other competitors. The Court, however, cannot consider these affidavits in deciding the pending motion, see supra pp. 16-17, and, thus, does not decide here whether such facts, if true, are sufficient to plead open-ended continuity.

alleged predicate acts do not "amount to or pose a threat of continued criminal activity." H.J. Inc., 492 U.S. at 239.

As Plaintiffs have failed to adequately allege a pattern of racketeering activity, they have failed to state a claim for relief under RICO and those claims against the ESI Defendants are hereby DISMISSED WITHOUT PREJUDICE.

### 3.   New York State Law Claims

The ESI also argue that Plaintiffs' state law claims must be dismissed for failure to state a claim.[27]   The Court will address each of Plaintiffs' state law claims separately.

#### a.   Donnelly Act

Section 340 of New York's General Business Law provides, in relevant part, as follows:

> Every contract, agreement, arrangement or combination whereby
>
> > A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby
> >
> > Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby

---

[27] They also asked the Court to decline to extend supplemental jurisdiction over Plaintiffs' state law claim in the event that all of Plaintiffs' federal claims were dismissed.  Given that many of Plaintiffs' federal claims survive this motion, the ESI Defendants' supplemental jurisdiction argument is moot.

> For the purpose of establishing or
> maintaining any such monopoly or
> unlawfully interfering with the free
> exercise of any activity in the conduct
> of any business, trade or commerce or in
> the furnishing of any service in this
> state any business, trade or commerce or
> the furnishing of any service is or may
> be restrained, is hereby declared to be
> against public policy, illegal and void.

N.Y. GEN. BUS. LAW § 340(1).

To state a claim under the Donnelly Act, a plaintiff must allege facts that: "(1) identify the relevant product market, (2) describe the nature and effects of the purported conspiracy, (3) allege how the economic impact of that conspiracy is to restrain trade in the market in question, and (4) show a conspiracy or reciprocal relationship between two or more entities." Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc., 34 A.D.3d 91, 94, 823 N.Y.S.2d 79, 81-82 (2d Dep't 2006). Further, a plaintiff must plead that he suffered an antitrust injury by "alleg[ing] that the challenged action had an actual adverse effect on competition as a whole in the relevant market." Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp., 736 F. Supp. 2d 661, 669 (W.D.N.Y. 2010) (internal quotation marks and citation omitted).

The ESI Defendants argue that Plaintiffs have failed to plead that they suffered an antitrust injury. The Court agrees. The Amended Complaint alleges that the ESI Defendants' actions

44

"push[ed] [Plaintiffs] from the biofuel and biofuel rendering markets on and in Long Island, New York." (Am. Compl. ¶ 184.) However, "[a]lleging injury as an individual competitor within the market does not suffice to state a claim for an antitrust injury as antitrust statutes were enacted to protect competition and not individual competitors." Wolf Concept, 736 F. Supp. 2d at 669; see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 488, 97 S. Ct. 690, 50 L. Ed. 2d 701 (1977). What effect, if any, the ESI Defendants' had on Long Island's biofuel market more generally is unknown.

Accordingly, to the extent that the ESI Defendants' motion seeks dismissal of Plaintiffs' Donnelly Act claim, their motion is GRANTED, and this claim is DISMISSED WITHOUT PREJUDICE.

b.   Consumer Protection Act

New York law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. GEN. BUS. LAW § 349(a). "To state a cause of action under § 349, a plaintiff must allege (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." Exxonmobile Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 447 (S.D.N.Y.2004). While it is not entirely clear, the Court reads the Amended Complaint as asserting that the ESI Defendants' arrangement with Defendant Stefanelli and other

45

unnamed officers to purposefully target and harass Plaintiffs and their businesses constitutes a "deceptive consumer-oriented act."[28] The ESI Defendants assert that this fails to state a claim because, inter alia, the Amended Complaint does not allege any "consumer-oriented" conduct on the part of the ESI Defendants.   The Court agrees.

A threshold issue in every § 349 case is whether the defendants' conduct was "consumer-oriented."  See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 532, 647 N.E.2d 741, 744 (1995).  "Consumer-oriented conduct does not necessarily require repetition or a pattern of deceptive behavior, but to state a claim of consumer-oriented deception, a plaintiff must allege that the disputed acts or practices have a broader impact on consumers at large." Exxonmobile, 328 F. Supp. 2d at 447.  Plaintiffs have failed to do that here.

---

[28] The Court does not read the Amended Complaint as asserting that the ESI Defendants engaged in deceptive practices in convincing Plaintiffs' customers to breach their contracts. Although Plaintiffs would likely have standing to assert such a claim, see M.V.B. Collision, Inc. v. Allstate Ins. Co., 728 F. Supp. 2d 205, 217-18 (E.D.N.Y. 2010), it was not specifically pled in the Amended Complaint, and the Court is under no obligation to construe Plaintiffs' pleading liberally, see Dayton v. City of Middletown, 786 F. Supp. 2d 809, 811 n.1 (S.D.N.Y. 2011) (noting that pleadings submitted by lawyers are not entitled to the less stringent standards and liberal interpretations afforded to pleadings drafted by pro se parties).

"In New York law, the term 'consumer' is consistently associated with an individual or natural person who purchases goods, services or property for 'personal, family or household purposes.'" Cruz v. NYNEX Info. Res., 263 A.D.2d 285, 289, 703 N.Y.S.2d 103, 106 (1st Dep't 2000); see also Genesco Entm't, a Div. of Lymutt Indus., Inc. v. Koch, 593 F. Supp. 743, 751 (S.D.N.Y. 1984) ("The typical violation contemplated by the statute involves an individual consumer who falls victim to misrepresentations made by a seller of consumer goods . . . ."). Thus, Plaintiffs and their companies--which are not engaged in buying goods, services, or property for personal use--are not the type of consumer that Section 349 was designed to protect.[29]

Accordingly, the ESI Defendants' motion to dismiss Plaintiffs' Consumer Protection Act claim is GRANTED, and the claim is DISMISSED WITH PREJUDICE.

c.   Intentional Infliction of Emotional Distress

Under New York law, intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Howell v. N.Y. Post Co., 81 N.Y.2d 115, 121, 596

---

[29] Plaintiffs argue otherwise, but they do not cite to any legal authority to support their assertion.

N.Y.S.2d 350, 353, 612 N.E.2d 699, 702 (1993); see also Sawicka v. Catena, 79 A.D.3d 848, 849, 912 N.Y.S.2d 666, 667 (2d Dep't 2010). The ESI Defendants argue that Plaintiffs have failed to plead extreme and outrageous conduct. The Court disagrees. The Amended Complaint asserts that the ESI Defendants falsely accused Jimmy of cutting their lock in an attempt to steal their oil, which resulted in his arrest and prosecution. (Am. Compl. ¶ 67.) This is sufficient to state a claim for intentional infliction of emotional distress. See, e.g., Levine v. Gurney, 149 A.D.2d 473, 473, 539 N.Y.S.2d 967, 968 (2d Dep't 1989) (finding that a false police report could form the basis of an intentional infliction of emotional distress claim). Accordingly, the ESI Defendants' motion to dismiss this claim is DENIED.[30]

    d.  Tortious Interference

       To state a claim for tortious interference with business relations in New York, a plaintiff must plead that: "(i) the

---

[30] It is unclear whether Plaintiffs also intend to bring a claim for negligent infliction of emotional distress, as they did not mention it in their opposition brief. Nonetheless, such a claim is meritless. To state a claim for negligent infliction of emotional distress under New York law, Plaintiffs must assert that they "suffer[ed] an emotional injury from defendant's breach of a duty which unreasonably endangered [their] own physical safety" or that they were "threatened with physical harm as a result of defendant's negligence." Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996). Here, there are no allegations that the ESI Defendants owed a duty to Plaintiffs nor are there allegations suggesting that Plaintiffs were ever threatened with physical harm.

plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship." Scutti Enters., L.L.C. v. Park Place Entm't Corp., 322 F.3d 211, 215 (2d Cir. 2003) (internal quotation marks and citation omitted). The ESI Defendants argue that Plaintiffs have failed to plead "any contracts that ESI Defendants allegedly interfered [sic]." (ESI Defs. Mot. 24.)   The Court disagrees. The Amended Complaint states that the ESI Defendants "stole customers that were duly contracted with Island Biofuel" (Am. Compl. ¶ 18) and gives the following examples:  Tutto Il Giorno, Fire House Deli, Huntington Social, Gio's Pizzeria, Ming Ting, Shang Hai Restaurant, and Nautilus Café (Am. Compl. Ex. A).

Accordingly, the ESI Defendants' motion to dismiss Plaintiffs' tortious interference claims is DENIED.

e.   Libel/Slander

Under New York law, to state a claim for libel or slander, a plaintiff must plead:  (1) an oral or written defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party by the defendant, (4) due to the fault of the defendant, and (5) injury to the plaintiff. Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 409 (2d Cir. 2000); Celle v. Filipino Reporter Enters., Inc., 209 F.3d 163, 176 (2d Cir. 2000). Further,

to survive a motion to dismiss, a plaintiff must allege "the time, place and manner of the false statement and identify to whom the false statement was made."  Thompson v. Bosswick, 855 F. Supp. 2d 67, 76 (S.D.N.Y. 2012).  The ESI Defendants argue that the Amended Complaint lacks the required specificity.  The Court disagrees. The Amended Complaint asserts that on or around September 7, 2011, Defendant David Parisi told the police that he saw Jimmy cut a lock owned by ESI.  (Am. Compl. ¶ 67.)  Whether this is, in fact, defamatory, and whether Plaintiffs have adequately pled the other elements of a libel or slander claim were not raised by the ESI Defendants, and the Court will not address these arguments sua sponte.

Accordingly, the ESI Defendants' motion to dismiss Plaintiffs' libel/slander claims is DENIED.

### f.   Fraud, Extortion, Theft, and Conversion

The ESI Defendants do not separately brief their grounds for dismissing Plaintiffs' fraud, extortion, theft, and conversion claims, but rather merely state in a footnote that "[f]or the reasons set forth above, Plaintiffs' causes of action for Fraud, Extortion, Theft and Conversion[] are inadequately alleged and likewise must be dismissed."  (ESI Defs. Mot. 24 n.12.)  Although a court need not consider an argument that is presented only in a footnote, cf. Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 446 n.3 (2d Cir. 2006), the ESI Defendants touched on these

causes of action when discussing whether the Amended Complaint adequately alleged RICO predicate acts. Thus, the Court will consider their arguments.

With respect to Plaintiffs' extortion claim, the ESI Defendants' argue--again in a footnote--that the Amended Complaint "make[s] absolutely no allegations regarding what acts by the ESI Defendants could possible [sic] constitute 'extortion.'" (ESI Defs. Mot. 15 n.7.) Plaintiffs do not refute this argument or address their extortion claim at all in their opposition papers; therefore, the Court deems this claim abandoned, see Adams, 752 F. Supp. 2d at 452 n.32, and DISMISSES it on that basis. Further, such claim is patently frivolous as extortion is a criminal offense, see N.Y. PENAL LAW § 155.05(2)(e), and may not be pled as a separate cause of action in a civil case, see Crandall v. Bernard, Overton & Russell, 133 A.D.2d 878, 876, 520 N.Y.S.2d 237, 238 (3d Dep't 1987) (affirming the dismissal of a civil cause of action for extortion, stating that "extortion . . . constitute[s] [a] criminal offense[] specifically defined in the Penal Law and, as such, w[as] improperly pleaded as a separate cause of action in the instant civil case"). Thus, Plaintiffs' extortion claim is DISMISSED WITH PREJUDICE.

With respect to Plaintiffs' fraud claim, the ESI Defendants argued in the RICO portion of their brief that Plaintiffs failed to adequately plead mail fraud relating to ESI's

51

letters to Plaintiffs, see supra p. 5, because the Amended Complaint does not specify which statements in those letters were false or fraudulent in violation of Rule 9. (ESI Defs. Mot. 15-16.) Plaintiffs again fail to refute this argument or mention their fraud claim at all in their opposition papers, and accordingly it is DISMISSED as abandoned.[31]

Finally, with respect to Plaintiffs' theft and conversion claims, the ESI Defendants argue--again in a footnote --that the allegations in the Amended Complaint are conclusory and insufficient to survive a motion to dismiss. (ESI Defs. Mot. 17 n.10 ("Plaintiffs also make the unfounded, untrue and wholly conclusory claim that the ESI Defendants have stolen their waste vegetable oil and customers since 2010. As for the alleged theft of oil and containers, Plaintiffs do not make a single specific allegation of theft, identifying what was stolen, from where, and when."). As an initial matter, Plaintiffs' theft claim fails for the same reason as Plaintiffs' extortion claim fails, and such claim is accordingly DISMISSED WITH PREJUDICE. The Court, however,

---

[31] To the extent that Plaintiffs base their fraud claim on David Parisi's allegedly false accusations to the police, their claim is without merit. To state a claim for common law fraud under New York law, a plaintiff must allege that he reasonably relied on the defendant's allegedly false representation. See Banque Arabe et Internationale D'Investissement v. Md. Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995). Here, the Amended Complaint does not allege, nor is it plausible to suggest, that Plaintiffs relied on David Parisi's statement to the police.

disagrees with the ESI Defendants' argument in support of dismissing the conversion claim.  To state a claim for conversion under New York law, a plaintiff must assert that "someone, intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to someone else, interfering with that person's right of possession." Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50, 827 N.Y.S.2d 96, 100, 860 N.E.2d 713, 717 (2006).  The Amended Complaint asserts that the ESI Defendants have taken nearly $15,000 worth of containers belonging to Plaintiffs and nearly $50,000 worth of oil belonging to Plaintiffs.  (Am. Compl. ¶¶ 22-23, 27-28.)  The Court finds that these allegations are sufficient to survive a motion to dismiss and, accordingly, DENIES the ESI Defendants' motion to dismiss Plaintiffs' conversion claim.

III. Leave to Amend

        Although Plaintiffs have not requested leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden v. Cnty. of Nassau, 180 F.3d 42, 53 (2d Cir. 1999); see also FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  Leave to amend should be granted unless there is evidence of undue delay, bad faith, undue prejudice, or futility.  See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001).   For the reasons

articulated above, the Court finds that it would be futile to grant Plaintiffs leave to replead their claims against the State Defendants, their New York state law claims against the County, and their New York State Consumer Protection Act, negligent infliction of emotional distress, extortion, fraud, and theft claims against the ESI Defendants, and those claims are hereby DISMISSED WITH PREJUDICE.   The Court GRANTS Plaintiffs leave to replead their Section 1983 claims against the County and Stefanelli in his official capacity and their RICO and Donnelly Act claims against the ESI Defendants.[32]

<u>CONCLUSION</u>

For the following reasons, it is hereby ORDERED that:

(1)   The County Defendants' partial motion to dismiss is GRANTED IN PART and DENIED IN PART.   All claims against the County Police Department, the RICO claims against the County and Stefanelli in his official capacity, and the state law claims against the County are DISMISSED WITH PREJUDICE, and the Section 1983 claims against the County and Stefanelli in his official

---

[32] Although the malicious prosecution claims against the ESI Defendants were dismissed without prejudice, the Court is not granting Plaintiffs leave to replead such claims at this time. There is no indication in Plaintiffs' opposition papers that, since the ESI Defendants filed their motion, the prosecution(s) was/were favorably terminated.   Plaintiffs may seek leave to amend to reassert malicious prosecution claims if and when that occurs.

capacity are DISMISSED WITHOUT PREJUDICE with leave to replead as outlined above.  It is further ORDERED that:

(2)  The State Defendants' motion to dismiss is GRANTED in its entirety, and all claims against the State Defendants are DISMISSED WITH PREJUDICE;

(3)  The ESI Defendants' motion is GRANTED IN PART and DENIED IN PART.  The malicious prosecution, RICO, and Donnelly Act claims are DISMISSED WITHOUT PREJUDICE, and the Consumer Protection Act, negligent infliction of emotional distress, extortion, fraud, and theft claims are DISMISSED WITH PREJUDICE. It is further ORDERED that:

(4)  Plaintiffs are granted leave to replead their Section 1983 Monell claims against the County and Stefanelli in his official capacity and their malicious prosecution, RICO, and Donnelly Act claims against the ESI Defendants.  If Plaintiffs wish to file a Second Amended Complaint repleading such claims, they must do so within thirty (30) days of the date of this Memorandum and Order.  If Plaintiffs fail to do so, the Amended Complaint will be the operative pleading, and the parties will proceed to discovery on the claims that survive this Memorandum and Order--namely, all claims against Defendant Stefanelli in his individual capacity, Jimmy's false arrest claim against the ESI Defendants, and both Plaintiffs' illegal search, intentional infliction of emotional distress, tortious interference,

55

libel/slander, and conversion claims against the ESI Defendants. Finally, it is ORDERED that:

(5)  All discovery is STAYED for thirty days.

The Clerk of the Court is directed to terminate the Suffolk County Police Department, the State of New York, the New York State Department of Environmental Conservation, and the New York State Department of Environmental Conservation Police Department as defendants in this action.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     September  18 , 2013
           Central Islip, NY

56