UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
JAMES V. NAPLES and JAMES C. NAPLES,

                    Plaintiffs,


        -against-

PHILIP STEFANELLI; JOSEPH PARISI;                 <u>MEMORANDUM & ORDER</u>
DAVID PARISI; ENVIRONMENTAL                       12-CV-4460(JS)(ARL)
SERVICES, INC.; COUNTY OF
SUFFOLK (NEW YORK); and JOHN DOES
1-100,

                    Defendants.
--------------------------------------X

APPEARANCES
For Plaintiffs:     Harry R. Thomasson, Jr., Esq.
                    Law Office of Harry Thomasson
                    3280 Sunrise Highway, Suite 112
                    Wantagh, NY 11793

For Defendants
Stefanelli:         Sean P. Lenihan, Esq.
                    Davis & Ferber, LLP
                    1345 Motor Parkway
                    Islandia, NY 11749

                    Arlene S. Zwilling, Esq.
                    Susan A. Flynn, Esq.
                    Suffolk County Attorney's Office
                    H. Lee Dennison Building, 5th Floor
                    100 Veterans Memorial Highway
                    Hauppauge, NY 11788

Suffolk County:     Arlene S. Zwilling, Esq.
                    Susan A. Flynn, Esq.
                    Suffolk County Attorney's Office
                    H. Lee Dennison Building, 5th Floor
                    100 Veterans Memorial Highway
                    Hauppauge, NY 11788

ESI Defendants:     Glen B. Gruder, Esq
                    Certilman Balin Adler & Hyman LLP
                    1393 Veterans Memorial Highway, Suite 301s
                    Hauppauge, NY 11788

Paul B. Sweeney, Esq.
Sanjay V. Nair, Esq.
Certilman Balin Adler & Hyman LLP
90 Merrick Avenue
East Meadow, NY 11554

SEYBERT, District Judge:

Currently pending before the Court is Defendants Environmental Services, Inc. ("ESI"), Joseph Parisi, and David Parisi's (collectively, the "ESI Defendants") motion to dismiss the Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 33.) For the following reasons, the ESI Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>

Plaintiffs James V. Naples ("James Naples") and James C. Naples ("Jimmy Naples") originally commenced this action on September 6, 2012 against three groups of defendants: (1) Suffolk County (the "County"), the Suffolk County Police Department (the "County Police Department"), and Philip Stefanelli ("Officer Stefanelli") (collectively, the "County Defendants"); (2) the State of New York, the New York State Department of Environmental Conservation Police Department (the "DEC Police Department"), and the New York State Department of Environmental Conservation (the "DEC") (collectively, the "State Defendants"); and (3) the ESI Defendants. Before any of the Defendants answered the original Complaint, Plaintiffs filed an Amended Complaint on October 17,

2

2012, which asserted a variety of federal and state law claims arising out of an alleged conspiracy among Defendants to drive Plaintiffs' Long Island-based biofuel companies out of business. Specifically, the Amended Complaint asserted claims for: (1) violations of Plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983; (2) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.; (3) violations of Section 340 of New York's General Business Law (the "Donnelly Act"); (4) violations of Section 349 of New York's Business Law (the "Consumer Protection Act"); (5) intentional/negligent infliction of emotional distress; (6) tortious interference with business relations; (7) conversion and theft (against Officer Stefanelli and the ESI Defendants only); (8) fraud and extortion; (9) negligent hiring, training, and supervision (against the Suffolk County Police Department and the DEC Police Department only); and (10) libel and slander (against all Defendants but the DEC Police Department). (See Am. Compl., Docket Entry 3, ¶¶ 142-233.)

The County Defendants filed a motion to dismiss the Amended Complaint on December 14, 2012, and the State Defendants and ESI Defendants filed separate motions to dismiss on January 31, 2013. (Docket Entries 13, 18, 19.) By Memorandum and Order dated September 18, 2013 (the "First Dismissal Order"), the Court granted the State Defendants' motion to dismiss, dismissing with

3

prejudice all claims against the State Defendants. <u>Naples v.</u>
<u>Stefanelli</u>, 972 F. Supp. 2d 373, 390-91 (E.D.N.Y. 2013). The Court
granted in part and denied in part the County Defendants' and the
ESI Defendants' motions to dismiss, dismissing without prejudice,
and with leave to replead, Plaintiffs' RICO and Donnelly Act claims
against the ESI Defendants, as well as Plaintiffs' claims against
the County and Officer Stefanelli alleging municipal liability
under Section 1983.[1]  <u>Id.</u> at 387-89, 394-97. The Court also
dismissed Plaintiff's malicious prosecution claim against the ESI
Defendants without prejudice, but did not grant Plaintiffs leave
to replead that claim. <u>Id.</u> at 402 n.32. Finally, the Court denied
the ESI Defendants' motion to dismiss insofar as it sought
dismissal of Jimmy Naples' false arrest claim and both Plaintiffs'
illegal search, intentional infliction of emotional distress,
tortious interference, libel/slander, and conversion claims.[2] <u>Id.</u>
at 393-94, 399-402.

---

[1] The Court dismissed with prejudice: (1) the claims against the
County and Officer Stefanelli in his official capacity for
alleged violations of RICO; (2) all state law claims against the
County; and (3) the Consumer Protection Act, negligent
infliction of emotional distress, extortion, fraud, and theft
claims against the ESI Defendants. <u>Naples</u>, 972 F. Supp. 2d at
389-90, 397-402. Plaintiffs stipulated to the dismissal of all
claims against the County Police Department and the DEC Police
Department. (<u>See</u> Thomasson Decl., Docket Entry 24-1, ¶ 2.)

[2] The County Defendants did not move to dismiss the Section 1983
and the RICO claims as pleaded against Officer Stefanelli in his
individual capacity.

Plaintiffs filed their Second Amended Complaint on October 25, 2013, which alleges the same factual background as the Amended Complaint, but attempts to correct the pleading deficiencies of Plaintiffs' malicious prosecution, RICO, and Donnelly Act claims against the ESI Defendants. The Second Amended Complaint is nearly identical to the Amended Complaint, the facts of which are set forth extensively in the First Dismissal Order. Accordingly, the Court presumes familiarity with the underlying allegations of this action, and the new allegations of the Second Amended Complaint are set forth throughout the discussion section of this Memorandum and Order.

Briefly, however,[3] Plaintiffs James Naples and Jimmy Naples, who are father and son respectively, were the owners and operators of Island Biofuel, LLC and JNS Industries, LLC (collectively, the "Naples Corporations"), two Long Island biofuel companies that were engaged in, _inter alia_, the business of collecting and reselling waste kitchen oil. (SAC ¶¶ 3-4.) Plaintiffs, through the Naples Corporations, would enter into contracts with restaurants on Long Island to collect and resell their used kitchen oil. (_See_ SAC ¶¶ 18-31.) If they secured a contract, Plaintiffs would provide the restaurant with locked

---

[3] The following facts are drawn from Plaintiffs' Second Amended Complaint and the documents attached thereto and referenced therein and are presumed to be true for the purposes of this Memorandum and Order.

containers to store its used oil pending Plaintiffs' scheduled pick-up. (SAC ¶ 29.)

Defendants Joseph Parisi and David Parisi own and operate Defendant ESI, a biofuel company that was in competition with the Naples Corporations. (SAC ¶¶ 6-8, 17.) Plaintiffs claim that beginning in 2010, ESI began targeting Plaintiffs' customers and inducing them to breach their contracts with the Naples Corporations and hire ESI instead. (SAC ¶¶ 18-19.) If ESI was successful in convincing one of Plaintiffs' customers to sign a contract with ESI, ESI would remove Plaintiffs' containers and locks from the premises and replace them with ESI's containers and locks. (SAC ¶ 19.) Plaintiffs estimate that between 2010 and May 2012, the ESI Defendants stole in excess of twenty thousand gallons of oil worth approximately $50,000, containers valued at $15,000, and $100,000 in lost profits from Plaintiffs' customers. (SAC ¶¶ 26-27.)

Plaintiffs also claim that the ESI Defendants employed Officer Stefanelli, a Suffolk County police officer, and paid him in cash to use his influence in the County Police Department to threaten, harass, and intimidate Plaintiffs because they were competitors of ESI. (SAC ¶¶ 80, 98-100, 102, Ex. C.) They allege that in September 2011, Officer Stefanelli and other County police officers pulled over and falsely arrested Jimmy Naples while he was driving a truck to collect waste cooking oil from Plaintiffs'

customers. (SAC ¶¶ 32-34.) The County officers and officers from the Suffolk County Motor Carrier Division allegedly conducted warrantless searches of the truck and wrongfully charged Island Biofuel with violating Section 140.00 of New York Vehicle and Traffic Law for operating a commercial vehicle in violation of the state's safety requirements--specifically, for having a broken windshield wiper blade and an expired "insurance health card." (SAC ¶ 55.) Officer Stefanelli also "arranged for the [DEC] to inspect and close" the Naples Corporations' garage in Center Moriches. (SAC ¶¶ 55-56, 74). The DEC ordered that the garage be closed, ticketed Jimmy Naples and Island Biofuel for operating a waste facility without a permit in violation of N.Y. Comp. Codes R & Regs. tit., § 360-1.7(a)(1)(i), and ticketed Island Biofuel for violating the New York Department of Transportation's regulations governing the safe operation of commercial motor vehicles, N.Y. Comp. Codes R & Regs. tit., § 820.0 et seq. (SAC ¶¶ 61, 76; Parisi Decl. Ex. 7.) Also, in October 2011, the County Police Department's Seventh Precinct (Defendant Stefanelli's precinct) rearrested Jimmy Naples and charged him with Criminal Mischief in the Fourth Degree in violation of N.Y. Penal Law § 145.00 for allegedly cutting a ten dollar lock on one of ESI's oil containers with bolt cutters (SAC ¶ 66; Parisi Decl. Ex. 7), apparently based on a false witness statements signed by David Parisi (SAC ¶ 67).

Plaintiffs claim that they discovered the alleged conspiracy between the ESI Defendants and Officer Stefanelli after Jimmy Naples' arrest, when Plaintiffs went to ESI's headquarters to retrieve some of their containers. (SAC ¶ 79.) Plaintiffs claim that upon arriving, they "were stunned to see Defendant Stefanelli working at the facility dressed fully in clothing indicating that he was employed by and working for Defendant ESI." (SAC ¶ 80.) They were "furious with the discovery of Defendant Stefanelli's presence," refused to sign the release forms for their containers, and insisted that the County Police Department be called. (SAC ¶ 83.) Officer Stefanelli made a call, and an officer arrived shortly thereafter. (SAC ¶ 84.) He spoke to Officer Stefanelli first and then told Plaintiffs that he would not get involved; if Plaintiffs wanted their container, they would have to sign the release as requested. (SAC ¶ 84.)

Plaintiffs allege that they complained to the County Police Department prior to and after Jimmy Naples' arrest, but the County never investigated the complaints or took any action to stop the ESI Defendants' alleged unlawful conduct. (SAC ¶¶ 85-86, 91-93.) Additionally, on April 4, 2012, Plaintiffs, through counsel, submitted a formal complaint to the County Police Department's Internal Affairs Division ("IAD") describing ESI's actions and Officer Stefanelli's alleged involvement and demanding that the charges against Jimmy Naples and Island Biofuel be

dropped.  (SAC Ex. C.)   IAD initially contacted Plaintiffs'
counsel to schedule an interview of Plaintiffs; however, no
interview was ever conducted. (SAC ¶¶ 92–93.)

Apparently, Officer Stefanelli found out about
Plaintiffs' IAD complaint.  (SAC ¶ 94.)  In response, he circulated
a letter to County police officers, which stated that the County
Police Department was to protect ESI and that, if anyone saw the
Naples Corporations collecting oil, they were to call Officer
Stefanelli immediately.  The letter stated that he had firsthand
knowledge that they were cutting locks and stealing oil and would
provide a sworn affidavit for petit larceny.  (SAC ¶ 96; Ex. B to
Pls.' Opp. to First Mot. to Dismiss, Docket Entry 24-5.)
Plaintiffs deny stealing any oil from the ESI Defendants, and they
interpreted Officer Stefanelli's letter as a threat and
retaliation for their IAD complaint.  (SAC ¶¶ 103–04.)

Plaintiffs ultimately sold their assets and exited the
industry in or around May 2012.  (SAC ¶ 106.)  However, before
this was known publicly, Officer Stefanelli approached Plaintiffs
while they were having breakfast one morning at a local diner.
(SAC ¶ 108.)  He stated, in sum and substance, that he was and had
been employed by ESI to conduct surveillance of ESI's competitors,
that there were other police officers involved, and that "a lot of
things went on" (which Plaintiffs interpret to mean illegal

activity).  (SAC ¶ 110.)  He was in full uniform and on duty at the time.  (SAC ¶ 109.)

DISCUSSION

The ESI Defendants move to dismiss all of the claims asserted against them in the Second Amended Complaint.  (Docket Entry 33.)  The Court will first set forth the applicable legal standard before turning to the ESI Defendants' motion more specifically.

## I.   Legal Standard

In deciding a Rule 12(b)(6) motion to dismiss, the Court applies a "plausibility standard," which is guided by "[t]wo working principles."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); accord Harris v. Mills, 572 F.3d 66, 71–72 (2d Cir. 2009).  First, although the Court must accept all allegations as true, this "tenet" is "inapplicable to legal conclusions;" thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678; accord Harris, 572 F.3d at 72.  Second, only complaints that state a "plausible claim for relief" can survive a Rule 12(b)(6) motion to dismiss.  Iqbal, 556 U.S. at 679. Determining whether a complaint does so is "a context-specific

10

task that requires the reviewing court to draw on its judicial experience and common sense." Id.; accord Harris, 572 F.3d at 72.

The Court is confined to "the allegations contained within the four corners of [the] complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). However, this has been interpreted broadly to include any document attached to the complaint, any statements or documents incorporated in the complaint by reference, any document on which the complaint heavily relies, and anything of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted); Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991).

II.  Section 1983 Claims

Section 1983 states:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must "'allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'"  Rae v.. Cnty. of

<u>Suffolk</u>, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting <u>Snider</u> <u>v. Dylag</u>, 188 F.3d 51, 53 (2d Cir. 1999)).

In the Second Amended Complaint, Plaintiffs reassert their Section 1983 false arrest and illegal search claims against the ESI Defendants, and also attempt to correct the pleading deficiency of their Section 1983 malicious prosecution claim against the ESI Defendants. (<u>See</u> SAC ¶¶ 143-50.) The ESI Defendants move to dismiss each claim for failure to state a claim.

A. <u>False Arrest</u>

In their motion to dismiss the Amended Complaint, the ESI Defendants' argued that Jimmy Naples' false arrest claims should be dismissed because Plaintiffs failed to adequately allege that the arrests lacked probable cause. (<u>See</u> ESI Defs.' Br. in Supp. of Mot. to Dismiss Am. Compl., Docket Entry 19-10, at 9-11.) The Court rejected that argument, explaining that, where, as in this case, "'an arrest is made without a warrant, the existence of probable cause is an affirmative defense that must be proved by the defendant.'" <u>Naples</u>, 972 F. Supp. 2d at 393 (quoting <u>Mejia v.</u> <u>City of N.Y.</u>, 119 F. Supp. 2d 232, 252-53 (E.D.N.Y. 2000)); <u>see</u> <u>also</u> <u>Brandon v. City of N.Y.</u>, 705 F. Supp. 2d 261, 269 (S.D.N.Y. 2010) ("The defendant has the burden of raising and proving the affirmative defense of probable cause." (internal quotation marks and citation omitted)). Although a defendant may raise an affirmative defense on a motion to dismiss so long as the defense

appears on the face of the complaint, the ESI Defendants failed to make that argument in their initial motion to dismiss, and the Court declined to consider the issue <u>sua</u> <u>sponte</u>. <u>Naples</u>, 972 F. Supp. 2d at 393 n.19.

The ESI Defendants now argue that the false arrest claims should be dismissed because "the face of the [Second Amended Complaint] reveals that probable cause existed for the arrest of Plaintiffs." (ESI Defs.' Br. in Supp. of Mot. to Dismiss SAC, Docket Entry 35, at 11).) It is true that that "an amended complaint ordinarily supersedes the original and renders it of no legal effect." <u>Int'l Controls Corp v. Vesco</u>, 556 F.2d 665, 668 (2d Cir. 1977) (citations omitted). However, a defendant "may not advance arguments that could have been made in the first motion to dismiss [that] were not" because an "amended complaint does not automatically revive all the defenses and objections the defendant may have waived in a first motion to dismiss." <u>G.L.M. Sec. & Sound, Inc. v. LoJack Corp.</u>, No. 10-CV-4701, 2012 WL 4512499, at *9 (E.D.N.Y. Sept. 28, 2012) (internal quotation marks and citations omitted); <u>see</u> <u>also</u> <u>Sears Petroleum & Transp. Corp. v. Ice Ban Am., Inc.</u>, 217 F.R.D. 305, 307 (N.D.N.Y. 2003) ("[I]f the amended complaint also contains new matter, the defendant may bring a second motion under Rule 12 to object to <u>the new allegations only</u>." (emphasis added)). The false arrest allegations in the Second Amended Complaint are identical to false arrest allegations

13

in the Amended Complaint.  The ESI Defendants therefore could have argued that probable cause existed in their first motion to dismiss, but they did not.  Accordingly, the ESI Defendants have waived the ability to assert this defense in a second motion to dismiss.  Their motion to dismiss the false arrest claims is therefore DENIED.

B.    Illegal Search

The ESI Defendants' motion to dismiss Plaintiffs' illegal search claim fails for the same reason.  In their first motion to dismiss, the ESI Defendants argued that Plaintiffs' Fourth Amendment claim arising out of the search of the Naples Corporations' garage should be dismissed because: (1) there was probable cause for the search; and (2) there was no allegation in the Amended Complaint that the ESI Defendants conspired with the police.  (ESI Defs.' Br. in Supp. of Mot. to Dismiss Am. Compl. at 12.)  The Court denied the ESI Defendants' motion, explaining that: (1) "the existence of probable cause, in and of itself, does not excuse the Fourth Amendment's warrant requirement"; and (2) Plaintiffs had sufficiently pleaded that the ESI Defendants were acting in concert with Officer Stefanelli.  Naples, 972 F. Supp. 2d at 393-94 (citations omitted).  The Court further noted that it seemed likely that the administrative search exception to the warrant requirement would apply in this case.  Id. at 394 n.20. However, the ESI Defendants did not raise the exception in their

initial motion to dismiss, and the Court declined to consider the issue sua sponte.  Id.

The ESI Defendants now argue that the illegal search claim as alleged in the Second Amended Complaint should be dismissed based on the administrative search exception. (ESI Defs.' Br. in Supp. of Mot. to Dismiss SAC at 13-15.)  The ESI Defendants could have raised this argument in their first motion to dismiss, but they did not.  Accordingly, like their probable cause defense, the ESI Defendants waived the ability to assert the administrative search exception in a second motion to dismiss. The ESI Defendants' motion to dismiss the illegal search claim is therefore DENIED.[4]

C.    Malicious Prosecution

In the First Dismissal Order, the Court dismissed Plaintiffs' malicious prosecution claims against the ESI Defendants because the Amended Complaint did not allege the required element that the criminal actions pending against Jimmy Naples and the Naples Corporations were terminated in their favor. Naples, 972 F. Supp. 2d at 393.  Although the Court dismissed the

_____

[4] In the First Dismissal Order, the Court stated that it would entertain a pre-discovery, partial motion for summary judgment on Plaintiffs' illegal search claim based on the administrative search exception.  Naples, 972 F. Supp. 2d at 394 n.20.  The ESI Defendants have not moved for summary judgment, however, and the Court declines to convert the ESI Defendants' motion to dismiss into one for summary judgment.

malicious prosecution claims without prejudice, the Court did not grant Plaintiffs leave to replead at that time because Plaintiffs' opposition papers provided no indication that the prosecutions favorably terminated. Id. at 402 n.32. Instead, the Court advised Plaintiffs that they could seek leave to amend to reassert the malicious prosecution claims if and when the prosecutions favorably terminated. Id.

Plaintiffs did not seek leave to amend. Instead, the Second Amended Complaint reasserts the malicious prosecution claims and attempts to correct the deficiencies of the Amended Complaint by alleging that: (1) "[a]ll charges . . . resolved favorably to James C. Naples and were dropped by Defendants Suffolk County" (SAC ¶ 66); and (2) "the prosecution of [the] charges have subsequently been ceased and dropped by Defendants" (SAC ¶ 134).[5] However, Plaintiffs acknowledge that the charges against Jimmy

_____

[5] Plaintiffs argue that the Court should not consider the ESI Defendants' motion to dismiss the malicious prosecution claim because, according to Plaintiffs, they "declined to plead any new Count for malicious prosecution" and only "cite[d] facts in the complaint making clear that the prosecution ended without any adjudication against Jimmy Naples or the Naples' corporations." (Pls.' Opp. Br., Docket Entry 40, at 14.) The actual allegations of the Second Amended Complaint suggest otherwise. (See, e.g., SAC ¶ 147(B) (alleging that Defendants violated Plaintiffs' constitutional rights by "[c]haring Plaintiff James C. Naples and/or Island Biofuel with one or more civil and/or criminal violations in connection with the vegetable oil storage garage").) Accordingly, the Court will entertain the ESI Defendants' motion to dismiss the malicious prosecution claim.

Naples and Island Biofuel were adjourned in contemplation of dismissal, (See Pls.' Opp. Br. at 7; Thomasson Decl., Docket Entry 40-1, Ex. B), which is not a favorable termination, see Humbach v. Canon, No. 13-CV-2512, 2014 WL 6057703, at *4 (S.D.N.Y. Nov. 12, 2014) ("The authorities are clear that an ACD is not a favorable termination because it leaves open the question of the accused's guilt." (emphasis omitted) (internal quotation marks and citation omitted)); see also Stone v. Port Auth. of N.Y. & N.J., No. 11-CV-3932, 2014 WL 3110002, at *9 (E.D.N.Y. July 8, 2014) ("'An adjournment in contemplation of dismissal, like a consent decree, involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt.'" (internal quotation marks and citation omitted)). Accordingly, because the prosecutions against Jimmy Naples and Island Biofuel did not terminate in Plaintiffs' favor, Plaintiffs' malicious prosecution claims are now DISMISSED WITH PREJUDICE.

IV. RICO

The ESI Defendants also move to dismiss Plaintiffs' RICO claim on several grounds. RICO was enacted to "'prevent organized crime from infiltrating America's legitimate business organizations.'" Manley v. Doby, No. 12-CV-4835, 2012 WL 5866210, at *3 (E.D.N.Y. Nov. 19, 2012) (quoting Moccio v. Cablevision Sys. Corp., 208 F. Supp. 2d 361, 371 (E.D.N.Y.2002)). The Act contains a criminal provision, see 18 U.S.C. § 1962, and a civil provision,

see 18 U.S.C. § 1964.  The civil provision permits the recovery of treble damages and reasonable attorney's fees for any person who is "injured in his business or property by reason of a violation of" the criminal provision.  18 U.S.C. § 1964(c).

To establish a civil RICO claim, "a plaintiff must show: '(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962.'" DeFalco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001) (quoting Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 101 F.3d 900, 904 (2d Cir. 1996)).  The Second Circuit has held that a RICO plaintiff has two pleading burdens.  First, a plaintiff "must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as 'criminal RICO.'" Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983).  To satisfy this burden,[6] the plaintiff must allege the following "seven constituent elements: (1) that the defendant (2) through the commission of two or more acts

_____

[6] Plaintiffs allege that the ESI Defendants have violated every subsection of Section 1962.  Subsection (a) prohibits the use of income derived from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise engaged in or whose activities affect interstate commerce. Subsection (b) prohibits the acquisition of any interest in or control of such an enterprise through a pattern of racketeering activity.  Subsection (c) prohibits the conduct or participation in the conduct of such an enterprise's affairs through a pattern of racketeering activity.  And subsection (d) prohibits conspiring to do any of the above.  18 U.S.C. § 1962.

(3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." Id. (quoting 18 U.S.C. § 1962(a)-(c)). A plaintiff must adequately allege these seven elements "before turning to the second burden--i.e., invoking RICO's civil remedies." Id. (citation omitted). To satisfy the second burden, a plaintiff "must allege that he was 'injured in his business or property by reason of a violation of section 1962.'" Id. (quoting 18 U.S.C. § 1964(c)).

In the First Dismissal Order, the Court dismissed Plaintiffs' RICO claim against the ESI Defendants because the Amended Complaint failed to plead two or more acts constituting a pattern of racketeering activity. See Naples, 972 F. Supp. 2d at 394-97. The ESI Defendants contend that the Second Amended Complaint fails to correct this pleading deficiency and also fails to plead a RICO enterprise or that the ESI Defendants' alleged racketeering activity proximately caused Plaintiffs' alleged injuries. (ESI Defs.' Br. in Supp. of Mot. to Dismiss SAC at 15-23.) The Court disagrees for the reasons explained below.

A.  RICO Enterprise

The ESI Defendants first argue that Plaintiff have failed to plead a RICO enterprise. (ESI Defs.' Br. in Supp. of Mot. to Dismiss SAC at 16-17.) The Court disagrees.

"[U]nder the so-called 'distinctness' requirement, to state a valid claim under RICO, a plaintiff must 'allege . . . the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." City of N.Y. v. Smokes-Spirits.com, Inc., 541 F.3d 425, 438 n.15 (2d Cir. 2008) (ellipsis in original) (quoting Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001)), rev'd on other grounds sub nom., Hemi Grp., LLC v. City of N.Y., 559 U.S. 1, 130 S. Ct. 983, 175 L. Ed. 2d 943 (2010). A RICO "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property," 18 U.S.C. § 1961(3), while a RICO "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4).

The Second Amended Complaint is not exactly a model of clarity, but the Court reads it to allege that Officer Stefanelli, Joseph Parisi, and David Parisi are the RICO persons and that these defendants, together with ESI, form the RICO enterprise. (See SAC ¶ 153 (alleging that Officer Stefanelli, Joseph Parisi, and David Parisi "effectuat[ed] a scheme . . . to knowingly and intentionally commit various offenses against Plaintiffs, for the direct and proximate purposes of eliminating Plaintiffs and their businesses

from competition to ESI, Joseph Parisi, and David Parisi, and for furthering a money laundering scheme"); SAC ¶ 157 (referring to Officer Stefanelli, ESI, Joseph Parisi, and David Parisi as the "enterprise members").) These allegations adequately state a RICO enterprise.

Because RICO "contemplate[s] that a <u>person</u> violates the statute by conducting an <u>enterprise</u> through a pattern of criminality," a corporation "cannot violate the statute by corrupting itself." <u>Cruz v. FXDirectDealer, LLC</u>, 720 F.3d 115, 120 (2d Cir. 2013) (emphasis in original) (citing <u>Bennett v. U.S. Trust Co. of N.Y.</u>, 770 F.2d 308, 315 (2d Cir. 1985)). Therefore, "a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)." <u>Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.</u>, 30 F.3d 339, 344 (2d Cir. 1994). However, under the United States Supreme Court's decision in <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 163, 121 S. Ct. 2087, 150 L. Ed. 2d 198 (2001), "an employee of a corporation is legally distinct from the corporation itself and therefore can function as a RICO person where the corporation is the alleged RICO enterprise." <u>Marini v. Adamo</u>, 812 F. Supp. 2d 243, 269 (E.D.N.Y. 2011) (citing <u>Cedric Kushner</u>, 533 U.S. at 163).

In <u>Cedric Kushner</u>, the plaintiff claimed that the president and sole shareholder of a rival corporation directed the corporation's affairs in violation of RICO. 533 U.S. at 160. The

district court dismissed the complaint and the Second Circuit affirmed, finding that the president, because he was an employee acting within the scope of his authority, was not legally distinct from the corporation.  Id. at 161.  The Supreme Court reversed, holding instead that a RICO person and enterprise need only be legally, not actually, distinct:

> While accepting the distinctness principle, we nonetheless disagree with the appellate court's application of that principle to the present circumstances--circumstances in which a corporate employee, acting within the scope of his authority, allegedly conducts the corporation's affairs in a RICO-forbidden way. The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status. And we can find nothing in the statute that requires more separateness than that.

533 U.S. at 163 (internal quotation marks and citations omitted).

Here, Plaintiffs allege, although not eloquently, that Officer Stefanelli, Joseph Parisi, and David Parisi directed the affairs of ESI in violation of RICO.  These allegations plausibly allege that Officer Stefanelli, Joseph Parisi, and David Parisi are RICO persons and that ESI is a RICO enterprise.  See DNJ Logistic Grp., Inc. v. DHL Express (USA), Inc., No. 08-CV-2789, 2010 WL 625364, at *5 (E.D.N.Y. Feb. 19, 2010) ("[T]he pleadings allege that [the individual defendant], as an employee acting within the scope of his duties, unlawfully conducted the affairs

of [the corporate defendant].  In this situation, [the individual defendant] serves as the 'person' and [the corporate defendant] serves as the 'enterprise' required to set forth a RICO claim."); see also Marini, 812 F. Supp. 2d at 270-71 (denying the defendants' motion for summary judgment on the ground that a RICO enterprise did not exist where the plaintiffs "asserted that [an employee was] the RICO person and that [the employee] together with [the corporation was] the enterprise).  Accordingly, the ESI Defendants' motion to dismiss Plaintiffs' RICO claims as against Joseph Parisi and David Parisi for failure to plead a RICO enterprise is denied.

However, Plaintiffs' RICO claim against ESI must be dismissed.  By naming ESI as a defendant, ESI "fills the roles of both the alleged person and enterprise," but it is "nothing more than a 'corporate defendant associated with its own employees.'" DNJ Logistic Grp., 2010 WL 625364, at *5 (quoting Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 89 (2d. Cir. 1999). Accordingly, Plaintiffs' RICO claim against ESI fails to allege a separate person and enterprise and is therefore DISMISSED WITH PREJUDICE.  See id. (dismissing a RICO claim against the corporate defendant because the corporate defendant was not a separate person from the enterprise, while maintaining the RICO claim against an employee of the enterprise).

B.  Predicate Acts

A RICO pattern of racketeering activity "must consist of two or more predicate acts of racketeering." Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 119 (2d Cir. 2013). "Racketeering activity" is defined as "any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 481–82, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985) (quoting 18 U.S.C. § 1961(1)).

In the Amended Complaint, Plaintiffs asserted that the following actions of the ESI Defendants constituted racketeering activity: (1) stealing Plaintiffs' vegetable oil and containers (Am. Compl. ¶ 154.A); (2) stealing Plaintiffs' customers through "extort[ion] and intimidate[ion]" and thus driving them out of business (Am. Compl. ¶ 154.B); and (3) money laundering (Am. Compl. ¶ 156).  (See also Am. Compl. ¶ 133) (listing theft, extortion, and money laundering.)  In the First Dismissal Order, the Court found that Plaintiffs' allegations that the ESI Defendants stole containers and oil did not adequately plead a predicate act of racketeering activity since not all theft constitutes racketeering activity under RICO.  Naples, 972 F. Supp. 2d at 395.  Rather, as

the Court noted, RICO is limited to robbery and extortion as defined by state law. Id. (citing 18 U.S.C. § 1961(1)(A)). The Court found that the Amended Complaint adequately pleaded a predicate act of extortion because it alleged that Plaintiffs gave up certain customers to ESI due to the ESI Defendants accusing Jimmy of committing a crime and Officer Stefanelli's abuse of his office. Id. at 395. However, the Amended Complaint failed to adequately plead robbery, which is defined as "forcible stealing," N.Y. PENAL LAW § 160.00, since the Amended Complaint was void of any allegations that the ESI Defendants used or threaten physical force in stealing Plaintiffs' property. Id. As noted, the Amended Complaint also alleged money laundering, in that the ESI Defendants used the proceeds that they derived from stealing Plaintiffs' oil, containers, and customers to pay Officer Stefanelli and other unnamed officers for their continued efforts to extort more customers from Plaintiffs. However, the Court did not consider whether these allegations adequately alleged a predicate act of money laundering under RICO because the ESI Defendants did not raise that issue in their initial motion to dismiss. Id. at 395-96.

The Second Amended Complaint re-alleges predicate acts of extortion (see SAC ¶¶ 155(B)-(C), (F)-(I)), money laundering (see SAC ¶ 157), and theft (see SAC ¶ 155(A)), and asserts a new

predicate act of mail fraud, (see SAC ¶¶ 23, 155(E), Ex. A.).[7]
With respect to the allegations of theft, the Second Amended
Complaint, like the Amended Complaint, is void of any allegations
plausibly alleging robbery.  Accordingly, to the extent that
Plaintiffs rely on mere theft to plead a predicate act, Plaintiffs
again have failed to sufficiently plead a predicate act.

     Plaintiffs have also failed to adequately plead a
predicate act of mail fraud.  Mail fraud is included in RICO's
definition of "racketeering activity."  See 18 U.S.C. § 1961(1)
(defining racketeering activity as including "any act which is
indictable under" 18 U.S.C. § 1341 (relating to mail fraud)).  "'To
prove a violation of the mail fraud statute, plaintiffs must
establish the existence of a fraudulent scheme and a mailing in
furtherance of the scheme.'"  Lundy, 711 F.3d at 119 (quoting
McLaughlin v. Anderson, 962 F.2d 187, 190–91 (2d Cir. 1992)).  To
survive a motion to dismiss a RICO claim alleging mail fraud, the
plaintiff must also satisfy the specific pleading requirement of
Federal Rule of Civil Procedure 9(b) that, "[i]n alleging

---

[7] Plaintiffs also newly allege that the "Defendants' scheme
included the illegal use of GPS tracking devices against
Plaintiffs to determine both the location of Plaintiffs'
customers and the location of James V. Naples on the day of his
arrest."  (SAC ¶ 155(J).)  Plaintiffs claim that this conduct is
illegal but they do not identify which law this conduct
violates.  As Plaintiffs are represented by counsel, the Court
will not scan Section 1961 to determine if this conduct violates
one of the numerous types of unlawful activities that
constitutes racketeering activity under RICO.

fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." FED. R. CIV. P. 9(b); see also DNJ Logistic Grp., 2010 WL 625364, at *6 ("A bare allegation of mail . . . fraud in a complaint is insufficient to demonstrate racketeering activity."). To satisfy Rule 9(b), "[a]llegations of predicate mail . . . fraud acts should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent." Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008) (second and third alterations in original) (internal quotation marks and citation omitted).

Here, Plaintiffs' only allegations of mail fraud are that the ESI Defendants sent "correspondence . . . on occasion when ESI took contracted customers and/or containers from Plaintiffs" and that "[t]he Defendants committed mail fraud and intimidation by forwarding letters to the Plaintiffs which the Defendants obtained from Plaintiffs' own customers." (SAC ¶¶ 23, 155(E).) Although the Second Amended Complaint attaches "representative" examples of these letters, it contains no allegations explaining or even suggesting why these communications were fraudulent. Thus, Plaintiffs' have not adequately stated a predicate act of mail fraud under RICO.[8] See DNJ Logistic Grp.,

---

[8] Plaintiffs' opposition brief does not address the ESI Defendants' substantive argument that Plaintiffs failed to state

2010 WL 625364, at *6 (finding that the plaintiff's sole allegation that "the mails . . . were used in connection with and in furtherance of other aspects of the aforesaid enterprise, scheme and conspiracy to defraud Plaintiff" failed to state a plausible RICO predicate act because it did not include any facts "suggesting . . . why such communications were fraudulent") (first ellipsis in original) (internal quotations marks and citation omitted)).

In sum, Plaintiffs have failed to plead a predicate act of either robbery or mail fraud, and the only alleged predicate acts that survive the ESI Defendants' motion to dismiss are extortion and money laundering. The Court will now address whether Plaintiffs have pleaded a pattern of racketeering activity.

C.    Pattern of Racketeering Activity

To establish a "pattern of racketeering activity," the predicate acts of racketeering activity must "'amount to or pose a threat of continued criminal activity.'" Cofacrèdit, S.A. v.

---

a mail fraud claim.  Instead, Plaintiffs only argue that "this Court permitted the Plaintiffs' claims regarding Mail Fraud in [the First Dismissal Order], and found that the letters submitted as representative letters sent by the ESI Defendants supported Plaintiffs' claims."  (Pls.' Opp. Br. at 20.)  This is not accurate.  Rather, the Court observed that in moving to dismiss the Amended Complaint, the ESI Defendants had raised and discredited mail fraud as a possible predicate act but that the Court would "not address it . . . as it was not specifically pled in the Amended Complaint."  Naples, 972 F. Supp. 2d at 395 n.23 (emphasis added).

Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999)
(quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239, 109 S.
Ct. 2893, 106 L. Ed. 2d 195 (1989)).  This continuity requirement
"can be satisfied either by showing a 'closed-ended' pattern--a
series of related predicate acts extending over a substantial
period of time--or by demonstrating an 'open-ended' pattern of
racketeering activity that poses a threat of continuing criminal
conduct beyond the period during with the predicate acts were
performed."  Spool v. World Child Int'l Adoption Agency, 520 F.3d
178, 183 (2d Cir. 2008).

The ESI Defendants argue that Plaintiffs have not
pleaded facts sufficient to allege either closed-ended or open-
ended continuity.  (ESI Defs.' Br. in Supp. of Mot. to Dismiss SAC
at 19-21.)  As discussed below, although the Court agrees that
Plaintiffs have failed to allege closed-ended continuity, they
have plausibly alleged open-ended continuity.

1.  Closed-Ended Continuity

"To satisfy closed-ended continuity, the plaintiff must
prove a series of related predicates extending over a substantial
period of time."  Cofacrèdit, 187 F.3d at 242 (internal quotation
marks and citation omitted); accord Spool, 520 F.3d at 184.
Although there are a variety of non-dispositive factors relevant
to the inquiry of whether closed-ended continuity exists,
including "the length of time over which the alleged predicate

acts took place, the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes," GICC Capital Corp. v. Tech. Fin. Grp., Inc., 67 F.3d 463, 467 (2d Cir. 1995), "closed-ended continuity is primarily a temporal concept," Cofacrèdit, 187 F.3d at 242. "Predicate acts extending over a few weeks or months . . . do not satisfy this requirement," H.J. Inc., 492 U.S. at 242, and the Second Circuit has "never held a period of less than two years to constitute a 'substantial period of time,'" Cofacrèdit, 187 F.3d at 242; see also GICC, 67 F.3d at 467–68 (collecting cases).

In the First Dismissal Order, the Court held that the Amended Complaint failed to plead closed-ended continuity because each alleged predicate act of extortion against Plaintiffs occurred within an eight-month period.[9] Naples, 972 F. Supp. 2d at 397. The Second Amended Complaint does not allege any new predicate acts involving Plaintiffs that occurred outside of this time period. Instead, Plaintiffs allege that "Defendants utilized the exact same tactics . . . against other companies and

---

[9] Additionally, the Court assumed, arguendo, that Plaintiffs adequately pleaded predicate acts of money laundering and found that the money laundering began, at the earliest, in 2010 when ESI began stealing Plaintiffs' containers and ended, at the latest, in 2012 when Plaintiffs sold their business. Naples, 972 F. Supp. 2d at 397 n.25. As these acts also occurred within a two-year period, the Court found that they similarly failed to plead closed-ended continuity. Id.

individuals working in the waste grease industry." (SAC ¶ 155(K).)
The Second Amended Complaint itself contains no factual
allegations supporting this claim. Rather, it attaches
declaration from two individuals associated with two of ESI's
competitors, MOPAC and Recycle Green Services, Inc. ("Recycle
Green"). Generally speaking, the declarations, submitted by Jim
Gammello ("Gamello"), who is the Long Island manager for MOPAC,
and Kevin Johnson ("Johnson"), who is a co-owner of Recycle Green,
allege that the ESI Defendants targeted MOPAC and Recycle Green in
addition to the Naples Corporations.[10] (See generally Gamello
Decl., Docket Entry 29-5; Johnson Decl., Docket Entry 29-7.)

Although not entitled to damages for the injuries of
third parties, a plaintiff may "allege injury to others in support
of allegations of an ongoing fraudulent scheme, or pattern of
racketeering activity." SKS Constructors, Inc. v. Drinkwine, 458
F. Supp. 2d 68, 80 (E.D.N.Y. 2006); see also Wells Fargo Century,
Inc. v. Hanakis, No. 04-CV-1381, 2005 WL 1523788 (E.D.N.Y. June
28, 2005) ("[I]f . . . only the acts involving Plaintiff can be
considered in determining whether the scheme alleged was
continuous, then schemes could remain in force, provided the

---

[10] Plaintiffs previously filed these declarations with their
opposition to the ESI Defendants' initial motion to dismiss the
Amended Complaint. However, the Court did not consider them in
deciding the motion since they were not attached to the Amended
Complaint. Id. at 397 n.26.

orchestrators changed targets prior to the accrual of a 'substantial' period of time."); First Interregional Advisors Corp. v. Wolff, 956 F. Supp. 480, 486 (S.D.N.Y. 1997) (finding closed-ended continuity because plaintiff "alleged a scheme that defrauded not one but several lenders and was supported by numerous predicate acts that occurred over a period of almost fourteen months."); cf. GICC, 67 F.3d at 468 (finding no continuity because, inter alia, the plaintiff failed to identify other victims).

In his declaration, Gammello describes interactions with the ESI Defendants similar to those experienced by Plaintiffs. He alleges that "on many occasions through the years, ESI by and through the Parisi Defendants have taken MOPAC customers, containers, locks and oil without permission." (Gammello Decl. ¶ 8.) He claims that he "reported" ESI to the Suffolk County Police Department "[o]n more than once occasion," and suggests that the police did nothing to stop the alleged theft. (See Gammello Decl. ¶¶ 8-17.) For example, Gammello corroborates Plaintiffs' account of the incident when they attempted to retrieve their containers from ESI after Jimmy Naples' arrest. (Gammello Decl. ¶¶ 13-17.) Gammello alleges that on March 27, 2012, he went to ESI's headquarters and found containers belonging to MOPAC and the Naples Corporations in ESI's parking lot. (Gammello Decl. ¶ 14.) He then called James Naples to scene. (Gammello Decl. ¶ 14.) He claims that Officer Stefanelli was there that day, and

after Naples "told [Gammello] who [Officer Stefanelli] was," Gammello and James Naples "both agreed that [they] needed to call the Suffolk County police to the scene." (Gammello Decl. ¶ 15.) Gammello and Naples informed the police that they wanted ESI criminally prosecuted for taking their containers, but after the officer spoke with Officer Stefanelli, he "kept insisting" that the matter was a civil dispute. (Gammello Decl. ¶ 16.)

Johnson similarly alleges that ESI has stolen Recycle Green's containers and oil on many occasions, and that Recycle Green has "complained" to the Suffolk County Police Department, but "no action has ever been taken by the Suffolk County Police to stop ESI from engaging in the tactic." (Johnson Decl. ¶¶ 1, 4.) He also claims that on May 31, 2012, he and two of his co-workers witnessed an employee of ESI place a GPS tracking device on one of Recycle Green's trucks. (Johnson Decl. ¶¶ 8-10.) They eventually "cornered the man in [a] parking lot" and called the Suffolk County Police Department, but when the man told the police officer he worked for ESI, the police officer returned the GPS device and told Johnson that he "believed that no laws were broken, and [he] let the man go." (Johnson Decl. ¶¶ 13-14.) Johnson also notes that the letter Officer Stefanelli circulated to County police officers urging officers to protect ESI states that Officer Stefanelli had firsthand knowledge that Recycle Green was cutting locks and stealing oil from ESI. (See Johnson Decl. ¶¶ 20-21.)

However, Johnson denies that Officer Stefanelli or any other police officer has "ever seen or accused anyone at Recycle Green of stealing anything from ESI." (Johnson Decl. ¶ 21.)

The Court cannot conclude that Plaintiffs have pleaded closed-ended continuity based on the accounts in the Gammello and Johnson Declarations. Although these affidavits allege that the ESI Defendants stole property from MOPAC and Recycle Green and suggest that Officer Stefanelli used his influence against MOPAC and Recycle Green, Gammello and Johnson never actually allege a predicate act of extortion. Extortion is defined by New York Penal Law as "compel[ling] or induc[ing] another person to deliver . . . property to himself or a third person by means of instilling in him a fear that, if the property is not so delivered, that actor or another will [commit one of the acts enumerated in the statute]." N.Y. PENAL LAW § 155.05(2)(e). Unlike Plaintiffs though, there is no allegation that MOPAC or Green Recycle willfully gave up customers or property to ESI because they feared retribution from Officer Stefanelli. Plaintiffs' therefore have not adequately pleaded a predicate act against either MOPAC or Recycle Green. Accordingly, Plaintiffs have not satisfied closed-ended continuity by alleging RICO injuries to non-party victims.

### 2. Open-Ended Continuity

However, the Court does find that Plaintiffs have pleaded open-ended continuity based on the allegations in the

34

Gammello and Johnson Declarations. Open-ended continuity exists "even if the predicate acts were not engaged in over an extended period of time. Instead, there must be a threat of continuing criminal activity 'extending indefinitely into the future.'" SKS Constructors, 458 F. Supp. 2d at 79-80 (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)). A fraudulent scheme which targets a single business or person is deemed to be "inherently terminable," and thus incapable of presenting an open-ended threat of continuing criminal activity. GICC, 67 F.3d at 466.

In the First Dismissal Order, the Court found that Plaintiffs failed to plead open-ended continuity because once the ESI Defendants eliminated Plaintiffs as competitors, their "'scheme essentially came to its conclusion.'" Naples, 972 F. Supp. 2d at 397 (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004)). Although the Second Amended Complaint does not change this, the Gammello and Johnson Declarations plausibly allege that the ESI Defendants were engaged in a larger scheme directed to other biofuel companies that might continue even after Plaintiffs' were driven out of business. Thus, although Plaintiffs may not have enough evidence to survive a motion for summary judgment, the Court finds that they have alleged open-ended continuity sufficient to survive a motion to dismiss.

35

D.    <u>Proximate Cause</u>

As a final ground for dismissal of the RICO claim, the ESI Defendants argue that Plaintiffs have not alleged that the RICO violations proximately caused an injury to Plaintiffs' business or property, as required pursuant to 18 U.S.C. § 1964(c). (ESI Defs.' Br. in Supp. of Mot. to Dismiss SAC at 21-23.)  The Court disagrees.

Under Section 1964(c), a plaintiff will have standing to assert a RICO claim if he was injured in his business or property "by reason of a violation of" the RICO statute.  18 U.S.C. § 1964(c).  "An injury occurs 'by reason of' a RICO violation when the illegal acts are a proximate cause of a plaintiff's injury." <u>Lawson v. Full Tilt Poker Ltd.</u>, 930 F. Supp. 2d 476, 488 (S.D.N.Y. 2013) (citing <u>Holmes v. Sec. Investor Prot. Corp.</u>, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992)).  "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."  <u>Anza v. Ideal Steel Supply Corp.</u>, 547 U.S. 451, 461, 126 S. Ct. 1991, 1998, 164 L. Ed. 2d 720 (2006)).

The ESI Defendants' argue that Plaintiffs have failed to adequately plead proximate cause because Plaintiffs' decision to leave was voluntary and that "the only plausible explanation for Plaintiffs' . . . decision . . . from the allegations in the [Second Amended Complaint] is that Plaintiffs were operating without

proper licenses, and exited the business because they had to obtain 'expensive' licenses and pay fines 'totaling tens of thousands of dollars.'" (ESI Defs.' Reply Br. in Supp. of Mot. to Dismiss SAC, Docket Entry 41, at 8.) Maybe this is true. But that is not what Plaintiffs allege in the Second Amended Complaint. Plaintiffs allege that they left the biofuel industry due to the ESI Defendants' alleged RICO violations, including that Officer Stefanelli extorted the Naples Corporations' by closing their garage and arresting Jimmy Naples only because Plaintiffs were competitors with ESI. Accepting these allegations as true, the Court finds that Plaintiffs have adequately pleaded proximate cause under RICO.

Accordingly, the ESI Defendants' motion to dismiss Plaintiffs' RICO claim is DENIED.

IV. <u>Donnelly Act</u>

Finally, the ESI Defendants argue that Plaintiffs' Donnelly Act claim must be dismissed for failure to state a claim.[11] The Court agrees.

---

[11] The ESI Defendants also ask the Court to decline to extend supplemental jurisdiction over Plaintiffs' state law claim in the event that all of Plaintiffs' federal claims were dismissed. Given that many of Plaintiffs' federal claims survive this motion, the ESI Defendants' supplemental jurisdiction argument is moot.

The ESI Defendants are correct, however, that the Court has dismissed Plaintiffs' negligent infliction of emotional distress and fraud claims with prejudice. <u>Naples</u>, 972 F. Supp. 2d at

Section 340 of New York's General Business Law provides, in relevant part:

> A monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby
>
> Competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained or whereby
>
> For the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void.

N.Y. GEN. BUS. LAW § 340(1).

To state a claim under the Donnelly Act, a plaintiff must allege facts that: "(1) identify the relevant product market, (2) describe the nature and effects of the purported conspiracy, (3) allege how the economic impact of that conspiracy is to restrain trade in the market in question, and (4) show a conspiracy or reciprocal relationship between two or more entities." Benjamin of Forest Hills Realty, Inc. v. Austin Sheppard Realty, Inc., 34

---

402. Yet, the Second Amended Complaint reasserts these claims. (See SAC ¶¶ 195-200; 212-18.) To avoid any confusion, the Court affirms that these claims have been dismissed with prejudice. and may not be reasserted in the Second Amended Complaint.

A.D.3d 91, 94, 823 N.Y.S.2d 79, 81–82 (2d Dep't 2006).  Further,
a plaintiff must plead that he suffered an antitrust injury by
"alleg[ing] that the challenged action had an actual adverse effect
on competition as a whole in the relevant market."  Wolf Concept
S.A.R.L. v. Eber Bros. Wine & Liquor Corp., 736 F. Supp. 2d 661,
669 (W.D.N.Y. 2010) (internal quotation marks and citation
omitted).

        In the First Dismissal Order, the Court dismissed
Plaintiffs' Donnelly Act claim because they failed to plead an
antitrust injury--specifically, the Amended Complaint only alleged
individual injury to the Naples Corporations and failed to allege
what effect, if any, the ESI Defendants' conduct had on the Long
Island biofuel market generally.  Naples, 972 F. Supp. 2d at 398.
Plaintiffs may have corrected this pleading deficiency through the
allegations of the Gammello and Johnson Declaration.  However, the
Court need not decide this issue or whether Plaintiffs have
standing to bring this claim because their Donnelly Act claim fails
as a matter of law for a different reason.

        "[A] restraint-of-trade Donnelly Act violation can only
occur when the alleged 'conspirators' are in competition with one
another or with the plaintiff."  Benjamin of Forest Hills Realty,
34 A.D.3d 91 at 98, 823 N.Y.S.2d at 84 (2d Dep't 2006); accord
Sands v. Ticketmaster-New York, Inc., 207 A.D.2d 687, 688, 616
N.Y.S.2d 362, 364 (1st Dep't 1994).  This situation is not present

39

here, because the ESI Defendants and Officer Stefanelli, are not competitors with one another or Plaintiffs. Instead, Plaintiffs allege that Officer Stefanelli is an ESI employee and a Suffolk County police officer. A police officer clearly does not compete in the biofuel industry, nor is Officer Stefanelli, as an agent of ESI, in competition with ESI or Plaintiffs. See Sands, 207 A.D.2d at 688, 616 N.Y.S.2d at 364 (holding that an agent and principal are not competitors for the purposes of the Donnelly Act). Because Plaintiffs cannot plead a conspiracy or reciprocal relationship between two or more entities, there can be no Donnelly Act violation.[12] This claim is therefore DISMISSED WITH PREJUDICE.[13]

[THIS PORTION OF THIS PAGE INTENTIONALLY LEFT BLANK]

---

[12] Plaintiffs appear to argue that they have alleged a conspiracy between competitors based on the allegations in the Gammello Declaration that David Parisi attempted to "engage MOPAC, through Gammello, in a conspiracy against Jimmy Naples." (Pls.' Opp. Br. at 23.) However, Gammello admits that he did not acquiesce to Parisi's overtures (see Gammello Decl. ¶ 25), and therefore, there could be no conspiracy between MOPAC and ESI.

[13] Because this claim fails as a matter of law, granting leave to replead would be futile.

<u>CONCLUSION</u>

For the foregoing reasons, the ESI Defendants' motion to dismiss the Second Amended Complaint (Docket Entry 33) is GRANTED IN PART and DENIED IN PART. The motion to dismiss is GRANTED insofar as it seeks dismissal of Plaintiffs' malicious prosecution and Donnelly Act claims against the ESI Defendants, and these claims are DISMISSED WITH PREJUDICE. However, the motion to dismiss is DENIED insofar as it seeks dismissal of Plaintiffs' false arrest, illegal search, and RICO claims against the ESI Defendants, and Plaintiffs may proceed with these claims.

SO ORDERED.

/S/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      February _7_, 2015
            Central Islip, NY