UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JAMES V. NAPLES and JAMES C. NAPLES,

                              Plaintiff,

          -against-                          **MEMORANDUM AND ORER**

                                             12-CV-4460 (JS)(AYS)

PHILIP STEFANELLI, JOSEPH PARISI,
DAVID PARISI, ENVIRONMENTAL
SERVICES, INC., AND JOHN DOES 1-100,

                              Defendants.

--------------------------------------------------------X

**SHIELDS, United States Magistrate Judge:**

      This case was commenced in 2012 by Plaintiffs James V. Naples and James C. Naples

(collectively "Plaintiffs') against several defendants, some of whom have since been dismissed

from the action. There have been two rounds of pleadings, and two decisions on motions to

dismiss, as described below.

      Presently before this Court is the motion of certain Defendants to amend their answer to

assert additional affirmative defenses as well as counterclaims and a cross-claim.  The motion

was made on November 22, 2016 – the deadline imposed by this court as the last day to, <u>inter

alia</u>, amend pleadings. The motion is unopposed.  Upon review of the motion and for the reasons

set forth below, the motion is granted.

BACKGROUND

I.    <u>Prior Proceedings</u>

    A.    <u>The Presently Operative Complaint: The Second Amended Complaint</u>

The facts set forth below are drawn from Plaintiff's latest pleading, <u>i.e.</u>, the Second

Amended Complaint. These facts have been set forth, in great detail, in the District Court's prior

1

opinions and, for ease of reference are, again, set forth below. The references are to the presently operative complaint, i.e., Plaintiffs' Second Amended Complaint (the "SAC") and the documents submitted in connection with the latest motion to dismiss. (See SAC, Docket Entry ("DE") 29.)

Plaintiffs are father and son who owned two biofuel companies that were companies engaged in, inter alia, the business of collecting and reselling waste kitchen oil. (SAC ¶¶ 3-7.) Plaintiffs' business model involved entering into contracts with restaurants that allowed Plaintiffs to collect and resell used kitchen oil. (See SAC ¶¶ 18-31.) If they secured a contract, Plaintiffs would provide the restaurant with which they contracted with locked containers to store used oil pending pick-up by Plaintiffs. (SAC ¶ 29.) Defendants Joseph Parisi and David Parisi own and operate Defendant ESI, a company that was in competition with the Plaintiff's company. (SAC ¶¶ 6-8, 17.) As referred to by the District Court, this Court refers to these Defendants collectively as the "ESI Defendants."

Plaintiffs claim that beginning in 2010, ESI began targeting Plaintiffs' customers and inducing them to breach their contracts with the Naples Corporations and hire ESI instead. (SAC ¶¶ 17-19) If ESI was successful in convincing one of Plaintiffs' customers to sign a contract with ESI, ESI would remove Plaintiffs' containers and locks from the premises and replace them with ESI's containers and locks. (SAC ¶ 19.) Plaintiffs estimate that between 2010 and May 2012, the ESI Defendants stole in excess of twenty thousand gallons of oil worth approximately $50,000, containers valued at $15,000, and $100,000 in lost profits from Plaintiffs' customers. (SAC ¶¶ 26–27.)

Plaintiffs also claim that the ESI Defendants employed Officer Stefanelli, a Suffolk County police officer, and paid him in cash to use his influence in the County Police Department to threaten, harass, and intimidate Plaintiffs because they were competitors of ESI. (SAC ¶¶ 80,

98-100, 102, Ex. C.) They allege that in September 2011, Officer Stefanelli and other County police officers pulled over and falsely arrested Jimmy Naples while he was driving a truck to collect waste cooking oil from Plaintiffs' customers. (SAC ¶¶ 32-34.) The County officers and officers from the Suffolk County Motor Carrier Division allegedly conducted warrantless searches of the truck and wrongfully charged Island Biofuel with violating Section 140.00 of New York Vehicle and Traffic Law for operating a commercial vehicle in violation of the state's safety requirements--specifically, for having a broken windshield wiper blade and an expired "insurance health card." (SAC ¶ 55.) Officer Stefanelli also "arranged for the [DEC] to inspect and close" the Naples Corporations' garage in Center Moriches. (SAC ¶¶ 55-56, 74). The DEC ordered that the garage be closed, ticketed Jimmy Naples and Island Biofuel for operating a waste facility without a permit in violation of N.Y. Comp. Codes R & Regs. tit., § 360-1.7(a)(1)(i), and ticketed Island Biofuel for violating the New York Department of Transportation's regulations governing the safe operation of commercial motor vehicles, N.Y. Comp. Codes R & Regs. tit., § 820.0 et seq. (SAC ¶¶ 61, 76; Parisi Decl. Ex. 7, DE 34-7.) Also, in October 2011, the County Police Department's Seventh Precinct (Defendant Stefanelli's precinct) rearrested Jimmy Naples and charged him with Criminal Mischief in the Fourth Degree in violation of N.Y. Penal Law § 145.00 for allegedly cutting a ten dollar lock on one of ESI's oil containers with bolt cutters (SAC ¶ 66; Parisi Decl. Ex. 7), apparently based on a false witness statements signed by David Parisi (SAC ¶ 67).

Plaintiffs claim that they discovered the alleged conspiracy between the ESI Defendants and Officer Stefanelli after Jimmy Naples' arrest, when Plaintiffs went to ESI's headquarters to retrieve some of their containers. (SAC ¶ 79.) Plaintiffs claim that upon arriving, they "were stunned to see Defendant Stefanelli working at the facility dressed fully in clothing indicating

that he was employed by and working for Defendant ESI." (SAC ¶ 80.) They were "furious with the discovery of Defendant Stefanelli's presence," refused to sign the release forms for their containers, and insisted that the County Police Department be called. (SAC ¶ 83.) Officer Stefanelli made a call, and an officer arrived shortly thereafter. (SAC ¶ 84.) He spoke to Officer Stefanelli first and then told Plaintiffs that he would not get involved; if Plaintiffs wanted their container, they would have to sign the release as requested. (SAC ¶ 84.)

Plaintiffs allege that they complained to the County Police Department prior to and after Jimmy Naples' arrest, but the County never investigated the complaints or took any action to stop the ESI Defendants' alleged unlawful conduct. (SAC ¶¶ 85- 86, 91-93.) Additionally, on April 4, 2012, Plaintiffs, through counsel, submitted a formal complaint to the County Police Department's Internal Affairs Division ("IAD") describing ESI's actions and Officer Stefanelli's alleged involvement and demanding that the charges against Jimmy Naples and Island Biofuel be dropped. (SAC ¶ 94, Ex. C.) IAD initially contacted Plaintiffs' counsel to schedule an interview of Plaintiffs; however, no interview was ever conducted. (SAC ¶¶ 92–93.)

Apparently, Officer Stefanelli found out about Plaintiffs' IAD complaint. (SAC ¶ 94.) In response, he circulated a letter to County police officers, which stated that the County Police Department was to protect ESI and that, if anyone saw the Naples Corporations collecting oil, they were to call Officer Stefanelli immediately. (SAC ¶ 95.) The letter stated that he had firsthand knowledge that they were cutting locks and stealing oil and would provide a sworn affidavit for petit larceny. (SAC ¶ 96; Ex. B to Pls.' Opp. to First Mot. to Dismiss, Docket Entry 24-5.) Plaintiffs deny stealing any oil from the ESI Defendants, and they interpreted Officer Stefanelli's letter as a threat and retaliation for their IAD complaint. (SAC ¶¶ 103–04.)

Plaintiffs ultimately sold their assets and exited the industry in or around May 2012.

(SAC ¶ 106.) However, before this was known publicly, Officer Stefanelli approached Plaintiffs

while they were having breakfast one morning at a local diner. (SAC ¶ 108.) He stated, in sum

and substance, that he was and had been employed by ESI to conduct surveillance of ESI's

competitors, that there were other police officers involved, and that "a lot of things went on"

(which Plaintiffs interpret to mean illegal activity). (SAC ¶ 110.) He was in full uniform and on

duty at the time. (SAC ¶ 109.) DI.

B.     The District Court's Decision and the Remaining Claims

Upon review of the facts and the legal standards applicable to all claims alleged, the

District Court granted in part and denied in part Defendants' motions to dismiss.  In particular,

that Court dismissed Plaintiffs' malicious prosecution and Donnelly Act claims against the ESI

Defendants. The Court denied, however, the motion to dismiss the claims of false arrest, illegal

search, and the RICO claims against the ESI Defendants.

As a result of the motion practice, the claims that remain for trial are:

- Section 1983 Claims in the nature of false arrest and illegal search

- RICO claim against the ESI Individual Defendants and Stefanelli

- RICO claim against the Individual ESI Defendants and Stefanelli

- Interference with business/contractual relations against ESI Defendants and Stefanelli

- Conversion against EDI Defendants and Stefanelli

- Claim for counsel fees.

See Status Report dated November 7, 2016, DE 54.

C.     Course of Discovery and Pretrial Proceedings

This Court held an initial conference in this matter on June 7, 2016. A discovery scheduled was entered. That schedule established November 22, 2016 as the last day to amend the pleadings. Additionally, at the status conference, this Court directed Plaintiff to serve a settlement demand by July 12, 2016, and for the parties to submit a joint status letter on July 18, 2016. DE 50. On September 13, 2016 this Court noted the parties' failure to comply with its July 7, 2016 order, and directed that a joint status letter be submitted by September 23, 2016. Electronic Order dated September 13, 2016.

On September 21, 2016, Plaintiffs' counsel, citing health problems, sought an extension of discovery deadlines. DE 52. On October 3, 2016, this Court granted the requested extension, and a new discovery schedule was entered. That schedule set November 22, 2016 as the last day to seek to amend the pleadings and March 15, 2017 as the date for completion of fact discovery. All discovery is now scheduled to be complete by June 1, 2017. This Court set January 20, 2017 for submission of the next joint status letter.

II.     The Present Motion to Amend

The ESI Defendants seek to amend their answer to assert three additional affirmative defenses, four counterclaims, and a cross-claim. Specifically, the ESI Defendants seek to assert the following affirmative defenses:

- Amounts, if any, determined to be owed by Defendants to Plaintiff shall be set off or reduced by any judgment awarded in favor of Defendants.

- To the extent that Plaintiffs suffered any damages as a result of the allegations set forth in the Complaint, such damages were caused, in whole or in part, by Plaintiffs' own culpable conduct and ESI Defendants are entitled to a reduction in any judgment and/or

verdict entered against it in an amount equal to the amount of damages caused by Plaintiffs' own culpable conduct.

- Pursuant to CPLR Article 16, the liability of Defendants for non-economic loss shall not exceed the equitable share of Defendants determined in accordance with the relative culpability of each person/party causing or contributing to the total liability for non-economic loss.

  DE 55-3.

As to counterclaims and cross-claims, the ESI Defendants seeks to assert four counterclaims against Plaintiffs as follows:

- Conversion and misappropriation
- Unjust enrichment
- Tortious interference with contract/business relationships and
- Conspiracy.

Finally, the ESI Defendants seek to assert a cross-claim against Defendant Stefanelli for contribution.

As noted, the motion was filed on November 22, 2016. There is no indication on the docket of any opposition to the motion, or request to extend the time in which to oppose. The Court holds the motion to therefore be ripe for decision.

DISCUSSION

I.    Legal Standard on Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings prior to trial. Fed. R. Civ. P. 15. Where, as here, leave of court is required to amend, the court has broad discretion to grant such leave "freely," "when justice so requires." Fed. R. Civ. P.

15(a)(2). Because amendments "tend to facilitate a determination on the merits," they are "generally favored." <u>Zucker v. Porteck Global Servs., Inc.</u>, 2015 WL 6442414, at *4 (E.D.N.Y. 2015) (citations omitted). As stated by the Supreme Court, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962). Thus, Rule 15 is construed liberally and courts have broad discretion to allow parties to add additional causes of action. <u>See</u> <u>Shpak v. Curtis</u>, 2012 WL 511478, at *4 (E.D.N.Y. 2012); <u>see also</u> <u>Hartman v. County of Nassau</u>, 2008 WL 1923127, at *18 (E.D.N.Y. 2008).

Despite the liberal construction generally afforded Rule 15, motions to amend are properly denied where they are founded in "undue delay, bad faith, futility, or prejudice to the non-moving party...." <u>Mendez v. U.S. Nonwovens Corp.</u>, 2 F. Supp. 3d 442, 451 (E.D.N.Y. 2014) (citation omitted). The non-movant bears the burden of demonstrating that the proposed amendment is improper. <u>Blaskiewicz v. Cnty. of Suffolk</u>, 29 F. Supp. 2d 134, 137 (E.D.N.Y. 1998).

II.    <u>The Motion to Amend is Granted</u>

Upon review of the motion and the supporting memorandum of law and, in particular, the liberal construction to be afforded motions to amend, this Court concludes that the motion to amend should be granted. The motion has been timely made. As evidenced by factual matters raised in prior motion practice, the additional affirmative defenses, counterclaims and crossclaim relate to matters that are clearly well-known to the parties. Despite the age of this case, the bulk of the time that has passed has been devoted to pre-answer motion practice. Therefore, while the matter has been pending since 2012, pretrial discovery remains in its infancy. Thus, allowing the ESI Defendants to assert additional claims at this time will not unduly delay the proceedings.

Finally, as noted, there is no opposition to the motion. Even if there were, this Court would not hold the motion to be precluded by either undue delay, bad faith, futility, or prejudice.

CONCLUSION

For the foregoing reasons, the ESI Defendants' motion amend their answer and assert counterclaims and a cross-claim, appearing on the docket as Docket Entry No. 55, is granted. The amended answer is to be served on or before January 6, 2017. The Court hereby cancels the previously entered requirement that the parties submit a status report on January 20, 2017. Instead, the Court directs all counsel to appear for an in-person status conference on January 23, 2017 at 10:30 A.M. At the January 23, 2017 conference, counsel must be prepared to discuss the status of settlement talks in this matter, as well as dates certain for the taking of all depositions. All other discovery deadlines remain in effect.

Dated: Central Islip, New York
　　　　December 29, 2016

　　　　　　　　　　　　　　　　　　　　 /s/ Anne Y. Shields
　　　　　　　　　　　　　　　　　　　　ANNE Y. SHIELDS
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge